Daniel Feinberg (SBN No. 135983)
Nina Wasow (SBN No. 242047)
FEINBERG, JACKSON,
WORTHMAN & WASOW LLP
2030 Addison Street, Suite 500
Berkeley, CA 94704
Tel. (510) 269-7998
Fax (510) 269-7994
dan@feinbergjackson.com
nina@feinbergjackson.com

Michelle C. Yau (*pro hac vice* application forthcoming)
COHEN MILSTEIN SELLERS & TOLL PLLC
1100 New York Ave. NW, Suite 800
Washington, DC 20005
Tel. (202) 408-4600
Fax (202) 408-4699
myau@cohenmilstein.com

Kai Richter (*pro hac vice* application forthcoming)
Jacob Schutz (*pro hac vice* application forthcoming)
COHEN MILSTEIN SELLERS & TOLL PLLC
400 South Fourth Street #401-27
Minneapolis, MN 55415
Tel. (612) 807-1575
Fax (202) 408-4699
krichter@cohenmilstein.com
jschutz@cohenmilstein.com

*Counsel for Plaintiff and the Proposed Class*

## UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE DAVALOS, individually and on behalf of all others similarly situated,<br><br>                    Plaintiff,<br><br>          v.<br><br>GREATBANC TRUST COMPANY, THE KRUSE WESTERN BOARD OF DIRECTORS, KEVIN KRUSE, THE KRUSE FAMILY TRUST, TONY CORREIA, THE TONY F. AND | Case No.<br><br>**CLASS ACTION COMPLAINT** |

MARY A. CORREIA REVOCABLE FAMILY
TRUST, ROBERT BERCZYNSKI, AUBREY
MICHAEL, CHAD PINTER, RONALD KRUSE,
THE RONALD O. KRUSE FAMILY TRUST,
LARRY LEITNER, HAL REED, MARK LA
BOUNTY, THE LA BOUNTY FAMILY
TRUST, BOB REEVES, KRUSE INVESTMENT
COMPANY, INC., THE 2007 KNUDSEN
FAMILY TRUST, THE JEFFREY AND KAREN
FONTANELLA TRUST, JORDYN KRUSE,
RYAN KRUSE, THE DOUGLAS T. KRUSE
TRUST, THE DAVIS FAMILY TRUST,
SECAP, THE KRUSE FEED AND SUPPLY,
INC. PROFIT SHARING PLAN, THE
LAMBERT FAMILY REVOCABLE TRUST,
WARREN HUTCHINGS, DOREEN
HUTCHINGS, SIDNEY EARP, RICHARD
EARP, MARK KREBSBACH, NICKIE
KREBSBACH, THE JOSEPH M. AND DEBRA
L. GUENLEY REVOCABLE LIVING TRUST,
THE HOLDSWORTH FAMILY REVOCABLE
TRUST, DANIEL J. MARTIN, THE MONTE
AND SUSAN MELLO TRUST, KRUSE
WESTERN, INC., and KRUSE WESTERN
ENTERPRISES, LLC,

Defendants.

## I.  INTRODUCTION

1.      This is a civil enforcement action brought pursuant to Sections 502(a)(2) and 502 (a)(3) of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. § 1132(a)(2) and (a)(3), by Plaintiff Jose Davalos, on behalf of himself and other participants and beneficiaries in the Western Milling Employee Stock Ownership Plan ("ESOP" or "Plan") arising out of the sale of the Plan's ownership interest in Kruse Western, Inc. ("Kruse Western" or the "Company") and associated consideration paid to Company insiders.

2.      The Western Milling ESOP[1] was an employee pension benefit plan under ERISA that was established in 2015 to invest in Kruse Western after the Company became the parent company of Western Milling LLC ("Western Milling"). While the ESOP was at all times supposed to function for the benefit of employees of Western Milling, it was conceived of and effectively hijacked by Company insiders who used it to enrich themselves.

3.      In 2015, the ESOP purchased Kruse Western from Company insiders for greater than fair market value, which was financed through notes issued to those same Company insiders, while allowing many of them to retain managerial control over the Company and its business operations.  The supposedly "independent" ESOP Trustee that approved that transaction, GreatBanc Trust Company ("GreatBanc"), was itself appointed by Company insiders and was subject to their control and effectively did their bidding. The terms of that 2015 transaction are the subject of a separate lawsuit pending in this district, captioned *Zavala et al. v. GreatBanc Trust Co. et al.*, No. 1:19-cv-00239-KES-SKO (E.D. Cal.).

4.       The claims in this action relate to a subsequent transaction in 2022 (the "2022 ESOP Transaction"), through which the Company insiders fleeced the ESOP once again. Pursuant to this multi-part integrated Transaction, the ESOP sold and returned its 2,000,000 in shares of Kruse Western back to the Company and Kruse Western Enterprises, LLC, which sold most of the Company's assets (including Western Milling) to Viserion Milling, LLC ("Viserion"), and a large

---

[1] On September 15, 2022, the Plan sponsor approved the termination of the Plan effective September 15, 2022, and entered the liquidation process. In the Plan year ending December 31, 2022, the at-issue Western Milling Employee Stock Ownership Plan was renamed the Kruse Western Capital Accumulation Plan.

portion of the monies exchanged in the Transaction were funneled to the Company insiders. Specifically, in connection with the 2022 ESOP Transaction, the Company insiders' notes were immediately paid off and they received special "bonus" compensation. However, the ESOP and its employee-owners did not receive fair market value for their equity interest in the Company, which was worth much more than what was left for the ESOP after the Company insiders were paid off.

5.      Nevertheless, GreatBanc also approved the 2022 ESOP Transaction as ESOP Trustee, while still under the effective control of the profiteering Company insiders.

6.      As a result of the 2022 ESOP Transaction, Plaintiff and the ESOP as a whole suffered financial harm because they failed to receive fair value for the ESOP's 2,000,000 shares of Company stock that were transferred to Kruse Western and Kruse Western Enterprises, LLC (both parties in interest) in connection with the integrated 2022 ESOP Transaction.

7.      ERISA Sections 409(a), 502(a)(2) & (a)(3), 29 U.S.C. §§ 1109, 1132(a)(2) & (a)(3), authorize participants such as Plaintiff to sue both individually and in a representative capacity on behalf of the Plan. Pursuant to that authority, Plaintiff brings this action on behalf of the Plan and all participants in the Plan  as of the date of the 2022 ESOP Transaction (and their beneficiaries) for violations of ERISA §§ 404 and 406, 29 U.S.C. §§ 1104, 1106, and for appropriate equitable relief and other remedies under § 1109 and 1132(a)(2) & (a)(3).

8.      **Subject Matter Jurisdiction**. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and ERISA § 502(a), 29 U.S.C. § 1132(a).

9.      **Personal Jurisdiction**. This Court has personal jurisdiction over Defendants because they transact business in, and have significant contacts with, this District, and ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), provides for nationwide service of process.

10.      **Venue.** Venue is proper in this district pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), for at least the following reasons:

(a)      Defendants may be found in this District, as they transact business in, and/or have significant contacts with this District;

(b)      Some Defendants reside in this District; and/or

(c)      Some of the alleged breaches took place in this District.

## II.  PARTIES

**Plaintiff**

11.     **Plaintiff Jose Davalos** was an employee of Western Milling and was a vested participant in the ESOP as of the time of the 2022 ESOP Transaction. Upon liquidation of the Plan, Plaintiff received less money than he otherwise would have received but for Defendants' unlawful conduct.  Because the ESOP's equity stake was undervalued in the 2022 ESOP Transaction, Plaintiff's share of that Transaction as an ESOP participant was also undervalued. Plaintiff was therefore financially harmed by the unlawful conduct alleged herein. Plaintiff currently resides in Orosi, California.

**Defendants**

12.     **Defendant GreatBanc Trust Company** was the Trustee of the Western Milling ESOP at the time of the 2022 ESOP Transaction and at all relevant times for purposes of this Complaint. As Trustee, GreatBanc was a fiduciary of the Plan within the meaning of ERISA § 3(21), 29 U.S.C. § 1002(21), because it exercised discretionary authority or discretionary control respecting management of the ESOP, exercised authority and control respecting management or disposition of the ESOP's assets, and/or had discretionary authority or discretionary responsibility in the administration of the ESOP. Defendant GreatBanc approved and authorized the 2022 ESOP Transaction on behalf of the ESOP.

13.     **Defendant Kruse Western Board of Directors** appointed GreatBanc as the ESOP Trustee and also approved and authorized the 2022 ESOP Transaction. At the time of the 2022 ESOP Transaction and at all relevant times for purposes of this Complaint, the Board of Directors was a fiduciary of the ESOP within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21), and a "party in interest" as to the ESOP as defined in ERISA § 3(14), 29 U.S.C. § 1002(14).

14.     **Defendant Kevin Kruse** was the CEO of Western Milling and/or the Company and the Chairman of the Board of Kruse Western at the time of the 2022 ESOP Transaction and at all relevant times for purposes of this Complaint. As a result of his membership on the Board of Directors, Mr. Kruse was at the time of the 2022 ESOP Transaction and at all relevant times a fiduciary of the ESOP within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21), and a "party

in interest" as to the ESOP as defined in ERISA § 3(14), 29 U.S.C. § 1002(14). In addition, as discussed below, Mr. Kruse is a trustee and beneficiary of the Kruse Family Trust, which was a Company note holder. At the time of the 2022 ESOP Transaction, Kevin Kruse directly or indirectly had a financial interest in the Transaction through Company notes and profited from that Transaction. Additionally, he had a financial interest in the 2022 ESOP Transaction and profited from that Transaction on account of special "bonus" compensation he received in connection with that Transaction as a Board member and Executive Management Team member.

15.    **Defendant Tony Correia** was a member of the Kruse Western Board of Directors at the time of the 2022 ESOP Transaction and at all relevant times for purposes of this Complaint. As a result of his membership on the Board of Directors, Mr. Correia was at the time of the 2022 ESOP Transaction and at all relevant times a fiduciary of the ESOP within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21), and a "party in interest" as to the ESOP as defined in ERISA § 3(14), 29 U.S.C. § 1002(14). Mr. Correia also was at all relevant times the President of Western Milling and/or the Company.  In addition, as discussed below, Mr. Correia is a trustee and beneficiary of the Correia Trust, which was Company note holder. At the time of the 2022 ESOP Transaction, Mr. Correia directly or indirectly had a financial interest in the Transaction through Company notes and profited from that Transaction. Additionally, he had a financial interest in the 2022 ESOP Transaction and profited from that Transaction on account of special "bonus" compensation he received in connection with that Transaction as a Board member and Executive Management Team member.

16.    **Defendant Robert Berczynski** was a member of the Kruse Western Board of Directors at the time of the 2022 ESOP Transaction and at all relevant times for purposes of this Complaint. Mr. Berczynski also was, as of the 2022 ESOP Transaction, the Executive Vice President of Commercial Sales and Nutrition at Western Milling and/or the Company. As a result, Mr. Berczynski was at the time of the 2022 ESOP Transaction and at all relevant times a fiduciary of the ESOP within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21), and a "party in interest" as to the ESOP as defined in ERISA § 3(14), 29 U.S.C. § 1002(14). Mr. Berczynski received Company notes in connection with the 2015 ESOP Transaction, continued to hold those

notes at the time of the 2022 ESOP Transaction, and had a financial interest in the 2022 ESOP

Transaction and profited from that Transaction.  Additionally, he had a financial interest in the 2022

ESOP Transaction and profited from that Transaction on account of special "bonus" compensation

he received in connection with that Transaction as a Board member and Executive Management

Team member.

17.    **Defendant Aubrey Michael** was a member of the Kruse Western Board of

Directors at the time of the 2022 ESOP Transaction and at all relevant times for purposes of this

Complaint.  In addition, Ms. Michael was the Executive Vice President of Human Resources at

Western Milling and/or the Company. As a result, Ms. Michael was at the time of the 2022 ESOP

Transaction and at all relevant times a fiduciary of the ESOP within the meaning of ERISA §

3(21)(A), 29 U.S.C. § 1002(21), and a "party in interest" as to the ESOP as defined in ERISA §

3(14), 29 U.S.C. § 1002(14). Mr. Michael had a financial interest in the 2022 ESOP Transaction

and profited from that Transaction on account of special "bonus" compensation he received in

connection with that Transaction as a Board member and Executive Management Team member.

18.    **Defendant Chad Pinter** was a member of the Kruse Western Board of Directors at

the time of the 2022 ESOP Transaction and at all relevant times for purposes of this Complaint. In

addition, Mr. Pinter also was the Executive Vice President and CFO of Western Milling and/or the

Company. As a result, Mr. Pinter was at the time of the 2022 ESOP Transaction and at all relevant

times a fiduciary of the ESOP within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21), and

a "party in interest" as to the ESOP as defined in ERISA § 3(14), 29 U.S.C. § 1002(14). Mr. Pinter

received Company notes in connection with the 2015 ESOP Transaction, continued to hold those

notes at the time of the 2022 ESOP Transaction, and had a financial interest in the 2022 ESOP

Transaction and profited from that Transaction. Additionally, he had a financial interest in the 2022

ESOP Transaction and profited from that Transaction on account of special "bonus" compensation

he received in connection with that Transaction as a Board member and Executive Management

Team member.

19.    **Defendant Ronald Kruse** was a member of the Kruse Western Board of Directors

at the time of the 2022 ESOP Transaction and at all relevant times for purposes of this Complaint.

He is Defendant Kevin Kruse's father. As a result of his membership on the Board of Directors, Ronald Kruse was at the time of the 2022 ESOP Transaction and at all relevant times a fiduciary of the ESOP within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21), and a "party in interest" as to the ESOP as defined in ERISA § 3(14), 29 U.S.C. § 1002(14). In addition, as discussed below, Ronald Kruse is or was a trustee and beneficiary of the Ronald O. Kruse Family Trust, which was a Company note holder. At the time of the 2022 ESOP Transaction, Ronald Kruse directly or indirectly had a financial interest in the Transaction through Company notes and profited from that Transaction. Additionally, he had a financial interest in the 2022 ESOP Transaction and profited from that Transaction on account of special "bonus" compensation he received in connection with that Transaction as a Board member.

20.    **Defendant Larry Leitner** was a member of the Kruse Western Board of Directors at the time of the 2022 ESOP Transaction and at all relevant times for purposes of this Complaint. As a result of his membership on the Board of Directors, Mr. Leitner was at the time of the 2022 ESOP Transaction and at all relevant times a fiduciary of the ESOP within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21), and a "party in interest" as to the ESOP as defined in ERISA § 3(14), 29 U.S.C. § 1002(14).  Mr. Leitner had a financial interest in the 2022 ESOP Transaction and profited from that Transaction on account of special "bonus" compensation he received in connection with that Transaction as a Board member.

21.    **Defendant Hal Reed** was a member of the Kruse Western Board of Directors at the time of the 2022 ESOP Transaction and at all relevant times for purposes of this Complaint. As a result of his membership on the Board of Directors, Mr. Reed was at the time of the 2022 ESOP Transaction and at all relevant times a fiduciary of the ESOP within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21), and a "party in interest" as to the ESOP as defined in ERISA § 3(14), 29 U.S.C. § 1002(14). Mr. Reed had a financial interest in the 2022 ESOP Transaction and profited from that Transaction on account of special "bonus" compensation he received in connection with that Transaction as a Board member.

22.    Together with the Board of Directors itself, the above members of the Board of Directors are referred to collectively herein as the **"Board Defendants."**

23.    The Board Defendants appointed GreatBanc to be the Trustee of the ESOP and had an ongoing obligation to monitor GreatBanc to ensure it was acting prudently, loyally and in conformance with ERISA's fiduciary requirements, and to ensure that the ESOP did not engage in prohibited transactions.

24.    Under California Corporations Code § 5210, the activities and affairs of the Company must be managed and all corporate powers shall be exercised by or under the direction of the Board of Directors.

25.    As part of their corporate oversight responsibilities, the Board Defendants were involved in the preparation, review and/or approval of the Company's financial statements and other documents bearing on the value of the Company.

26.    **Defendant Mark La Bounty** formerly was a member of the Kruse Western Board of Directors from October 31, 2015 to May 16, 2016. At the time of the 2022 ESOP Transaction and at all relevant times for purposes of this Complaint, Mr. La Bounty was the Chief Administrative Officer and General Counsel of Western Milling and, on information and belief, the Secretary and General Counsel of Kruse Western. As a result of his status as an employee and officer, Mr. La Bounty was at all relevant times a "party in interest" as to the ESOP as defined in ERISA § 3(14), 29 U.S.C. § 1002(14). In addition, as discussed below, Mark La Bounty is or was a trustee and beneficiary of the La Bounty Family Trust, which was a Company note holder. At the time of the 2022 ESOP Transaction, Mr. La Bounty directly or indirectly had a financial interest in the Transaction through Company notes and profited from that Transaction. Additionally, he had a financial interest in the 2022 ESOP Transaction and profited from that Transaction on account of special "bonus" compensation he received in connection with that Transaction as an Executive Management Team member.

27.    **Defendant Bob Reeves** was the Senior Vice President of Commercial Operations at Western Milling and/or the Company at the time of the 2022 ESOP Transaction and at all relevant times for purposes of this Complaint. As a result of his status as an employee and officer, Mr. Reeves was at all relevant times a "party in interest" as to the ESOP as defined in ERISA § 3(14), 29 U.S.C. § 1002(14). Mr. Reeves had a financial interest in the 2022 ESOP Transaction and

profited from that Transaction on account of special "bonus" compensation he received in connection with that Transaction as an Executive Management Team member.

28.     Defendants La Bounty and Reeves, together with Defendants Kevin Kruse, Tony Correia, Robert Berczynski, Aubrey Michel, and Chad Pinter, are collectively referred to herein as the "**Executive Management Team**."

29.     **Defendant Kruse Investment Company, Inc**., is headquartered in Goshen, California. Defendant Kevin Kruse is or has at relevant times been the majority shareholder. Kruse Investment Company received subordinated Company notes in connection with the 2015 ESOP Transaction, continued to hold those notes at the time of the 2022 ESOP Transaction, and had a financial interest in the 2022 ESOP Transaction and profited from that Transaction. Kruse Investment Company was majority owned by a fiduciary of the ESOP, and was thus a "party in interest" as to the ESOP as defined in ERISA § 3(14), 29 U.S.C. § 1002(14).

30.     **Defendant The Tony F. and Mary A. Correia Revocable Family Trust** ("Correia Trust") was created July 19, 2001, and Defendant Tony Correia is or at relevant times was a trustee. Upon information and belief, Defendant Tony F. Correia is or was a beneficiary of the Correia Trust. The Correia Trust received subordinated Company notes in connection with the 2015 ESOP Transaction, continued to hold those notes at the time of the 2022 ESOP Transaction, and had a financial interest in the 2022 ESOP Transaction and profited from that Transaction. Because the Correia Trust acts through its trustee, who is a fiduciary of the ESOP, and also because Tony Correia holds at least a 50% beneficial interest in the Correia Trust, the Correia Trust is a "party in interest" as to the ESOP as defined in ERISA § 3(14), 29 U.S.C. § 1002(14).

31.     **Defendant 2007 Knudsen Family Trust** ("Knudsen Trust") was created on August 15, 2007. The Knudsen Trust received subordinated Company notes in connection with the 2015 ESOP Transaction, continued to hold those notes at the time of the 2022 ESOP Transaction, and had a financial interest in the 2022 ESOP Transaction and profited from that Transaction.

32.     **Defendant The Jeffrey and Karen Fontanella Trust** ("Fontanella Trust") was created on June 28, 20017. Its trustees are or were at relevant times Jeffrey R. and Karen K. Fontanella. The Fontanella Trust received subordinated Company notes in connection with the 2015

ESOP Transaction, continued to hold those notes at the time of the 2022 ESOP Transaction, and had a financial interest in the 2022 ESOP Transaction and profited from that Transaction.

33.    Defendants Kruse Investment Company, Inc., the Correia Trust, Knudsen Trust, and Fontanella Trust, together with Tony Correia, are referred to collectively herein as the **"KW Selling Shareholders."**

34.    **Defendant La Bounty Family Trust** ("La Bounty Trust") was created June 2, 2003, and Defendant Mark La Bounty is or at relevant times was a trustee. Upon information and belief, Defendant Mark La Bounty is or was a beneficiary of the La Bounty Trust. The La Bounty Trust received Company notes in connection with the 2015 ESOP Transaction, continued to hold those notes at the time of the 2022 ESOP Transaction, and had a financial interest in the 2022 ESOP Transaction and profited from that Transaction. Because the La Bounty Trust acts through its trustee, who is an employee and officer of the Company and Western Milling, and also because Mark La Bounty on information and belief holds at least a 50% beneficial interest in the La Bounty Trust, the La Bounty Trust is a "party in interest" as to the ESOP as defined in ERISA § 3(14), 29 U.S.C. § 1002(14).

35.    **Defendant Ronald O. Kruse Family Trust** ("R. Kruse Trust") was created on May 31, 1996, and Defendant Ronald O. Kruse is or at some relevant times was a trustee. Upon information and belief, Defendant Ronald O. Kruse is or was a beneficiary of the R. Kruse Trust. The R. Kruse Trust received Company notes in connection with the 2015 ESOP Transaction, continued to hold those notes at the time of the 2022 ESOP Transaction, and had a financial interest in the 2022 ESOP Transaction and profited from that Transaction. Because the R. Kruse Trust acts through its trustee, who is a fiduciary of the ESOP, and also because Ronald Kruse on information and belief holds at least a 50% beneficial interest in the R. Kruse Trust, the R. Kruse Trust is a "party in interest" as to the ESOP as defined in ERISA § 3(14), 29 U.S.C. § 1002(14).

36.    **Defendant Jordyn Kruse** received Company notes in connection with the 2015 ESOP Transaction, continued to hold those notes at the time of the 2022 ESOP Transaction, and had a financial interest in the 2022 ESOP Transaction and profited from that Transaction. Jordyn

Kruse is Defendant Kevin Kruse's daughter. Thus, she is a "party in interest" as to the ESOP as defined in ERISA § 3(14), 29 U.S.C. § 1002(14).

37.    **Defendant Ryan Kruse** received Company notes in connection with the 2015 ESOP Transaction, continued to hold those notes at the time of the 2022 ESOP Transaction, and had a financial interest in the 2022 ESOP Transaction and profited from that Transaction. Upon information and belief, Ryan Kruse is Defendant Kevin Kruse's son. Thus, he is a "party in interest" as to the ESOP as defined in ERISA § 3(14), 29 U.S.C. § 1002(14).

38.    **Defendant The Douglas T. Kruse Trust** ("D. Kruse Trust) was created October 29, 1996. Its Trustee is or was at some relevant times Douglas T. Kruse. Upon information and belief, Douglas T. Kruse is or was a beneficiary of the D. Kruse Trust. The D. Kruse Trust received Company notes in connection with the 2015 ESOP Transaction, continued to hold those notes at the time of the 2022 ESOP Transaction, and had a financial interest in the 2022 ESOP Transaction and profited from that Transaction. Upon information and belief, Douglas Kruse is Defendant Kevin Kruse's brother. Because the D. Kruse Trust acts through its trustee, who is a relative of a fiduciary of the ESOP, the D. Kruse Trust is a "party in interest" as to the ESOP as defined in ERISA § 3(14), 29 U.S.C. § 1002(14).

39.    **Defendant The Davis Family Trust** ("Davis Trust") was created in 2014. Its Trustees are or were at some relevant times Robert A. Davis and Lisa A. Davis. Upon information and belief, Robert A. Davis and Lisa A. Davis are or were beneficiaries of the Davis Trust. The Davis Trust received Company notes in connection with the 2015 ESOP Transaction, continued to hold those notes at the time of the 2022 ESOP Transaction, and had a financial interest in the 2022 ESOP Transaction and profited from that Transaction.

40.    **Defendant SECAP** is a California General Partnership. SECAP received Company notes in connection with the 2015 ESOP Transaction, continued to hold those notes at the time of the 2022 ESOP Transaction, and had a financial interest in the 2022 ESOP Transaction and profited from that Transaction. The Managing Partners of SECAP are or were the Seley Family Trust (James C. Seley, Co-Trustee) and the Charlene R. Seley Revocable Trust (Charlene Seley, Trustee).

41.    **Defendant The Kruse Feed and Supply, Inc. Profit Sharing Plan** is or at some relevant times was, on information and belief, a pension plan under ERISA. Richard Henry Kruse is or at some relevant times was the trustee and plan administrator of the plan. The plan received Company notes in connection with the 2015 ESOP Transaction, continued to hold those notes at the time of the 2022 ESOP Transaction, and had a financial interest in the 2022 ESOP Transaction and profited from that Transaction. Richard Henry Kruse is Defendant Kevin Kruse's uncle. Because the Kruse Feed and Supply, Inc. Profit Sharing Plan acts through its trustee, who is a relative of a fiduciary of the ESOP, the Plan is a "party in interest" as to the ESOP as defined in ERISA § 3(14), 29 U.S.C. § 1002(14).

42.    **Defendant The Lambert Family Revocable Trust** ("Lambert Trust") was created March 15, 2002. Its trustees are or were at some relevant times Mark G. Lambert and Melissa A. Lambert. Upon information and belief, Mark Lambert is or was a beneficiary of the Lambert Trust. The Lambert Trust received Company notes in connection with the 2015 ESOP Transaction, continued to hold those notes at the time of the 2022 ESOP Transaction, and had a financial interest in the 2022 ESOP Transaction and profited from that Transaction. Upon information and belief, Mark Lambert is or was an employee of Western Milling. Because the Lambert Trust acts through its trustee, who is or was an employee of Western Milling, the Lambert Trust is or was a "party in interest" as to the ESOP as defined in ERISA § 3(14), 29 U.S.C. § 1002(14).

43.    **Defendants Warren Hutchings and Doreen Hutchings** received Company notes in connection with the 2015 ESOP Transaction, continued to hold those notes at the time of the 2022 ESOP Transaction, and had a financial interest in the 2022 ESOP Transaction and profited from that Transaction.

44.    **Defendants Sidney Earp and Richard Earp** received Company notes in connection with the 2015 ESOP Transaction, continued to hold those notes at the time of the 2022 ESOP Transaction, and had a financial interest in the 2022 ESOP Transaction and profited from that Transaction.

45.    **Defendants Mark Krebsbach and Nickie Krebsbach** received Company notes in connection with the 2015 ESOP Transaction, continued to hold those notes at the time of the 2022

ESOP Transaction, and had a financial interest in the 2022 ESOP Transaction and profited from that Transaction.

46.     **Defendant The Joseph M. and Debra L. Guenley Revocable Living Trust** ("Guenley Trust") was created December 14, 2004. Its Trustees are or were at some relevant times Joseph M. and Debra L. Guenley. The Guenley Trust received Company notes in connection with the 2015 ESOP Transaction, continued to hold those notes at the time of the 2022 ESOP Transaction, and had a financial interest in the 2022 ESOP Transaction and profited from that Transaction.

47.     **Defendant The Holdsworth Family Revocable Trust** ("Holdsworth Trust") was created March 11, 2009. Its Trustees are or were at some relevant times Michael G. Holdsworth and Carol D. Holdsworth. The Holdsworth Trust received Company notes in connection with the 2015 ESOP Transaction, continued to hold those notes at the time of the 2022 ESOP Transaction, and had a financial interest in the 2022 ESOP Transaction and profited from that Transaction.

48.     **Defendant Daniel J. Martin** received Company notes in connection with the 2015 ESOP Transaction, continued to hold those notes at the time of the 2022 ESOP Transaction, and had a financial interest in the 2022 ESOP Transaction and profited from that Transaction.

49.     **Defendant The Kruse Family Trust** was created August 20, 1997. Its trustees are or were at some relevant times Defendant Kevin H. Kruse and Bernardina D. Kruse. Upon information and belief, Defendant Kevin Kruse is or was a beneficiary of the Kruse Family Trust. The Kruse Family Trust received Company notes in connection with the 2015 ESOP Transaction, continued to hold those notes at the time of the 2022 ESOP Transaction, and had a financial interest in the 2022 ESOP Transaction and profited from that Transaction. Because the Kruse Family Trust acts through its trustee, who is an employee of the Company and Western Milling and a fiduciary of the ESOP, the Kruse Family Trust is a "party in interest" as to the ESOP as defined in ERISA § 3(14), 29 U.S.C. § 1002(14).

50.     **Defendant The Monte and Susan Mello Trust** ("Mello Trust") was created May 22, 2014. Its trustees are or were at some relevant times Monte Mello and Susan Mello. Upon information and belief, Monte Mello is or was a beneficiary of the Mello Trust. The Mello Trust

received Company notes in connection with the 2015 ESOP Transaction, continued to hold those notes at the time of the 2022 ESOP Transaction, and had a financial interest in the 2022 ESOP Transaction and profited from that Transaction. Upon information and belief, Monte Mello is or was an employee of Western Milling. Because the Mello Trust acts through its trustee, who is or was an employee of Western Milling, the Mello Trust is or was a "party in interest" as to the ESOP as defined in ERISA § 3(14), 29 U.S.C. § 1002(14).

51.    Defendants La Bounty Trust, R. Kruse Trust, Jordyn Kruse, Ryan Kruse, D. Kruse Trust, Davis Trust, SECAP, the Kruse Feed and Supply, Inc. Profit Sharing Plan, Lambert Trust, Warren Hutchings and Doreen Hutchings, Sidney Earp and Richard Earp, Mark Krebsbach and Nickie Krebsbach, Guenley Trust, Holdsworth Trust, Daniel J. Martin, Kruse Family Trust, and Mello Trust, together with Robert Berczynski, Chad Pinter, Kevin Kruse, and Ronald Kruse, are referred to collectively herein as the "**WM Member Sellers.**"

52.    **Defendant Kruse Western, Inc.** was a "party in interest" as to the Plan at the time of the 2022 ESOP Transaction and at all relevant times pursuant to ERISA § 3(14), 29 U.S.C. § 1002(14), as it owned 50 percent or more of Western Milling, and Western Milling's employees were covered by the ESOP prior to its termination.

53.    **Defendant Kruse Western Enterprises, LLC** ("KW Enterprises") was a "party in interest" as to the Plan at the time of the 2022 ESOP Transaction and at all relevant times pursuant to ERISA § 3(14), 29 U.S.C. § 1002(14), as it indirectly owned 50 percent or more of Kruse Western and was controlled by Kevin Kruse who was a fiduciary of the ESOP.

54.    Both Kruse Western and KW Enterprises dealt directly with the ESOP in connection with the 2022 ESOP Transaction. Specifically, the ESOP exchanged its 2,000,000 shares with Kruse Western and KW Enterprises for substantially less than fair market value.

### III.  FACTUAL ALLEGATIONS

**The Company and the ESOP**

55.    Kruse Western was incorporated in September 2015, and at all relevant times was the parent company of Western Milling.

CLASS ACTION COMPLAINT

56.     Kruse Western established the ESOP on November 4, 2015, pursuant to a written instrument entitled the Western Milling Employee Stock Ownership Plan ("Plan Document").

57.     At all relevant times, the ESOP covered employees of Western Milling, LLC, including Plaintiff.[2]

58.     The Plan was an employee stock ownership plan that was designed to invest in Company stock.

59.     The Plan was intended to be a "qualified" plan under Section 401(a) of the Internal Revenue Code and was subject to the requirements of ERISA.

60.     Under ERISA, the ESOP must be managed for the exclusive purpose of providing benefits to participants and their beneficiaries. *See* 29 U.S.C. § 1104(a). However, contrary to ERISA's mandate, the Plan has been managed for the benefit of Company insiders.

**The 2015 ESOP Transaction**

61.     The 2015 transaction in which the ESOP was established and acquired Kruse Western (the "2015 ESOP Transaction") is the subject of the *Zavala* class action referenced above. *See supra* at ¶ 3.

62.     In connection with the 2015 ESOP Transaction, the ESOP purchased Kruse Western for an effective purchase price of $360 million, which was materially inflated and exceeded the fair market value of the Company at that time. As just one example of the reasons the ESOP overpaid for Kruse Western stock—as set forth in the *Zavala* complaint—the ESOP did not gain control over Kruse Western when it purchased 100% of the Company's stock in 2015; yet the ESOP's purchase price did not reflect a sufficient discount in price for the lack of control.

63.     The purchase price was financed through a series of notes. One set of Company insiders, referred to herein as the WM Member Sellers, gave up their membership interests in Western Milling immediately before it was acquired by Kruse Western, and wound up receiving $115,869,600 in notes issued by Kruse Western. Another set of Company insiders, referred to herein as the KW Selling Shareholders, wound up receiving $244,130,400 in notes issued by Kruse

---

[2] The ESOP also covered employees of OHK Transport LLC, OHK Logistics, LLC, and Winema Elevators, LLC.

Western. These notes were originally issued by the ESOP but were contemporaneously refinanced. As a result of the refinancing, the Company issued new notes to the KW Selling Shareholders and the Company received a corresponding note from the ESOP in an equal amount.

64. Because the debt the Company took on substantially exceeded the enterprise value of the Company, it would immediately face significant financial strain from the excessive loan payments it was required to make. This led to a sustained period (seven years) where the Company's equity value was a small fraction of what the ESOP paid.

65. The end result of this 2015 Transaction, which was approved by GreatBanc as the ESOP Trustee (after being appointed to that role by Company's Board and also by the KW Selling Shareholders who were profiting from the deal), was a massive leveraged payout to the former owners of Western Milling and its parent company, Kruse Western.[3]

**The 2022 ESOP Transaction**

66. From the standpoint of the WM Member Sellers and KW Selling Shareholders (collectively, the "Seller Defendants"), there was a problem with this scheme: they would not get their money immediately upon consummation of the 2015 Transaction.

67. The 2022 ESOP Transaction solved this "problem." Armed with the control they retained over the Company, and taking advantage of the Company's financial problems as a result of being over-leveraged,[4] the Board Defendants, the Executive Management Team and the Sellers facilitated the return of all 2,000,000 shares back to the Company to allow them to cash out their Seller Notes and siphon out additional money (in the form of bonuses) from the Company; as a result, in 2022 when the ESOP sold/transferred its shares back to the Company, it received less than fair market value for its 2,000,000 shares of Kruse Western stock.

_____

[3] The Company's Board members at the time (including Defendants Kevin Kruse, Tony Correia, Robert Berczynski, Aubrey Michael, Chad Pinter, and Ronald Kruse) and senior managers received a large portion of this payout, yet continued to serve in their existing roles and exercise control over the Company going forward.

[4] The excessive loan payments on the debt that were used to finance the 2015 Transaction drained the Company of the cash necessary to grow and operate properly.

68.     Under the terms of the 2022 ESOP Transaction, Western Milling transferred certain assets to Kruse Western, Kruse Western sold its ownership interest in Western Milling to Viserion, the ESOP transferred all 2,000,000 shares of Company stock to Kruse Western and KW Enterprises, the ESOP's indebtedness to the Company was forgiven, and the bulk of the proceeds of the sale were used to repay the note obligations to the Seller Defendants and additional bonuses to the Board Defendants and Executive Management Team. The end result of this integrated transaction was that Company insiders – the Seller Defendants, Board Defendants, and Executive Management Team – were enriched, but the ESOP received less than fair market value for its 2,000,000 shares as it received essentially the leftovers that remained after Defendants received various payouts and bonuses.

69.     The Plan's Form 5500 filing for year-end 2022 describes certain aspects of the 2022 ESOP Transaction: "The Plan Trustee [on behalf of the ESOP] entered into a Stock Purchase and Redemption Agreement with the Company and Kruse Western Enterprises, LLC to sell 400,000 shares of the Company's stock back at a price of $125.00 per share, in exchange for the forgiveness of the outstanding indebtedness and the return of 1,600,000 unallocated shares of the Company stock." As such the ESOP's 2,000,000 shares were transferred to the Company and/or KW Enterprises, both of which were parties in interest.

70.     Severely compromised by their own self-interest, the Board Defendants approved the deal. Their disclosures to ESOP participants acknowledged the Board members' financial interests in the 2022 ESOP Transaction based on their outstanding notes, and the extra bonuses that they would receive along with the Executive Management Team.  Indeed, in explaining the "reasons for the Board's recommendation to approve the transaction," the Board expressly admitted "the interests that officers and directors of the Company may have in connection with the Transaction" were "carefully considered" by the Board. Had the Board Defendants and Executive Management Team not abused their power over the Company (owned by the ESOP) in order to enrich themselves in the 2022 Transaction, the ESOP would have received more money for its 2,000,000 shares which were transferred back to the Company. As just one example, the extra

bonuses paid to Board Defendants and Executive Management Team were unreasonable and took away value from the ESOP in the 2022 ESOP Transaction.

71.     GreatBanc also approved the 2022 ESOP Transaction as the ESOP Trustee, despite the disadvantageous terms for the ESOP.  In doing so, its judgment was also severely compromised. GreatBanc gave its endorsement to the 2022 ESOP Transaction based on "discussions with members of Company management and the Board."  On information and belief, GreatBanc's due diligence into the 2022 ESOP Transaction was just as biased, incomplete, and imprudent as its investigation into the 2015 ESOP Transaction that is the subject of the *Zavala* action.

72.     A prudent, diligent, and unbiased fiduciary acting in the interest of the participants and beneficiaries of the ESOP would not have approved the 2022 ESOP Transaction.

## IV.  CLASS ACTION ALLEGATIONS

73.     Plaintiff brings these claims as a class action pursuant to Fed. R. Civ. P. 23 on behalf of all vested participants in the Western Milling ESOP as of the date of the 2022 ESOP Transaction and those participants' beneficiaries. Excluded from the Class are Defendants and their immediate family, any fiduciary of the Plan; the officers and directors of Kruse Western (including any of its subsidiaries or affiliates), or of any entity in which a Defendant has a controlling interest; and legal representatives, successors, and assigns of any such excluded persons.

74.     **Numerosity.** The members of the Class are so numerous that joinder of all members is impracticable. As of the date of the 2022 ESOP Transaction, there were hundreds of vested participants in the ESOP.

75.     **Commonality.**  The issues of liability are common to all members of the Class and are capable of common answers, as those issues primarily focus on Defendants' acts (or failures to act). Questions of law and fact common to the Class as a whole include, but are not limited to, the following:

a.      Whether the Defendants identified in Counts I and II engaged in a prohibited transaction;

b.      Whether GreatBanc engaged in a prudent investigation of the 2022 ESOP Transaction;

c.      Whether GreatBanc breached its fiduciary duties under ERISA by causing the ESOP to go forward with the 2022 ESOP Transaction;

d.      Whether the Board Defendants breached their fiduciary duties by failing to adequately monitor GreatBanc;

e.      Whether the Seller Defendants had actual or constructive knowledge of the prohibited transaction and fiduciary breaches alleged herein;

f.      The amount of losses suffered by the ESOP as a result of Defendants' unlawful conduct; and

g.      The nature and form of other appropriate remedial and equitable relief.

76.    **Typicality.**  Plaintiff's claims are typical of those of the Class because his claims arise from the 2022 ESOP Transaction, which affected all Class members in the same fundamental way. Plaintiff challenges the legality of this plan-wide transaction. Like other ESOP participants in the Class, Plaintiff received less consideration for his personal stake in the ESOP than he would have received if the ESOP had received fair market value in 2022 ESOP Transaction, and continues to suffer financial harm because Defendants have failed to correct the underpayment for the ESOP's shares in connection with the 2022 ESOP Transaction.

77.    Because Plaintiff seeks relief on behalf of the ESOP pursuant to § 502(a)(2) of ERISA, 29 U.S.C. § 1132(a)(2), his claims are not only typical of, but the same as, a claim under § 502(a)(2) brought by any other Class member.

78.    **Adequacy.**  Plaintiff will fairly and adequately represent and protect the interests of the Class. Plaintiff does not have any interests antagonistic to or in conflict with those of the Class. He understands that this matter cannot be settled without the Court's approval.

79.    Defendants do not have any unique defenses that would interfere with Plaintiff's representation of the Class.

80.    Plaintiff has retained counsel competent and experienced in complex class actions, including ERISA and employee benefits litigation, and with particular experience and expertise in ESOP litigation.

81.     **Rule 23(b)(1)(A).** Class certification is appropriate pursuant to Fed. R. Civ. P. 23(b)(1)(A). Fiduciaries of ERISA-covered plans have a legal obligation to act consistently with respect to all similarly-situated participants and beneficiaries and to act in the best interests of the ESOP and its participants and beneficiaries. This action alleges that Defendants acted inconsistently with their fiduciary duties and otherwise violated ERISA as to the ESOP as a whole. As a result, prosecution of separate actions by individual members would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct relating to the ESOP.

82.     **Rule 23(b)(1)(B).** Class certification is also appropriate pursuant to Fed. R. Civ. P. 23(b)(1)(B). Administration of an ERISA-covered plan requires that all similarly-situated participants and beneficiaries be treated the same. Resolving whether Defendants fulfilled their fiduciary obligations to the ESOP, engaged in a prohibited transaction with respect to the Plan, or otherwise violated ERISA would, as a practical matter, be dispositive of the interests of the other participants and beneficiaries in the ESOP even if they are not parties to this litigation and would substantially impair or impede their ability to protect their interests if they are not made parties to this litigation by being included in the Class.

83.     **Rule 23(b)(2).** Class certification is appropriate pursuant to Fed. R. Civ. P. 23(b)(2) because Defendants have acted or refused to act on grounds generally applicable to the Class, making appropriate declaratory and injunctive relief with respect to Plaintiff and the Class as a whole. This action alleges that Defendants acted inconsistently with their fiduciary duties and otherwise violated ERISA as to the ESOP as a whole. The members of the Class are entitled to declaratory and injunctive relief to remedy Defendants' fiduciary violations and other ERISA violations. As ERISA is based on trust law, any monetary relief consists of equitable monetary relief and is either provided directly by the declaratory or injunctive relief or flows as a necessary consequence of that relief.

84.     **Rule 23(b)(3).** Additionally, and alternatively, class certification is appropriate pursuant to Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to all Class members predominate over any questions affecting individual members of the Class, and because a class action is superior to other available methods for the fair and efficient adjudication of this

action. Common questions related to liability will necessarily predominate over any individual questions precisely because Defendants' duties and obligations were uniform to all participants and therefore all members of the Class. Plaintiff and all Class members have been harmed by the terms of the 2022 ESOP Transaction, the inadequate consideration paid to the ESOP for its ownership interest in the Company, and the siphoning of consideration to Company insiders. As relief and any recovery will be on behalf of the Plan, common questions as to remedies will likewise predominate over any individual issues.

85.    A class action is a superior method to other available methods for the fair and efficient adjudication of this action. As the claims are brought on behalf of the ESOP, resolution of the issues in this litigation will be more efficiently resolved in a single proceeding rather than multiple proceedings. The financial harm suffered by individual Class members is relatively small compared to the expense and burden of individual prosecution of this action. In addition, class certification is superior because it will obviate the need for unduly duplicative litigation which might result in inconsistent judgments about Defendants' duties with regard to the ESOP.

86.    The following factors set forth in Rule 23(b)(3) also favor certification of this case as a class action:

    a)    The members of the Class have an interest in a unitary adjudication of the issues presented in this action for the reasons that this case should be certified under Rule 23(b)(1).

    b)    No other litigation concerning the 2022 ESOP Transaction has been filed by any other members of the Class.

    c)    This District is the most desirable location for concentrating the litigation for reasons that include (but are not limited to) the following: (i) the ESOP was administered in part in this District, (ii) certain Defendants can be found in this District, and (iii) certain non-party witnesses are located in this District.

87.    The names and addresses of the Class are available from the ESOP's records. Notice will be provided to all members of the Class to the extent required by Rule 23.

CLASS ACTION COMPLAINT

## COUNT I

### Prohibited Transaction in Violation of ERISA § 406(a), 29 U.S.C. §§ 1106(a)

(Against Defendants Kevin Kruse, Tony Correia, Robert Berczynski, Aubrey Michael, Chad Pinter, Ronald O. Kruse, Larry Leitner, Hal Reed, Mark La Bounty, Bob Reeves, Kruse Investment Company, Correia Trust, La Bounty Trust, R. Kruse Trust, Jordyn Kruse, Ryan Kruse, D. Kruse Trust, Kruse Feed & Supply Profit Sharing Plan, Lambert Trust, Kruse Family Trust, Mello Trust, Kruse Western, KW Enterprises, and GreatBanc)

88.     Plaintiff incorporates the preceding paragraphs as though set forth herein.

89.     ERISA § 406(a)(1), 29 U.S.C. § 1106(a)(1), requires that a plan fiduciary "shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect (A) sale or exchange, or leasing of any property between the plan and a party in interest," or a "(D) transfer to, or use by or for the benefit of, a party in interest, of any assets of the plan."

90.     ERISA § 3(14), 29 U.S.C. § 1002(14), defines a "party in interest" to include (among other parties) any fiduciary  of an employee benefit plan; "an employer any of whose employees are covered by such plan;" an "owner, direct or indirect, of 50 percent or more of … an employer" whose employees are covered by such plan; "a corporation, partnership, or trust or estate of which (or in which) 50 percent or more of (i) the combined voting power of all classes of stock entitled to vote or the total value of shares of all classes of stock of such corporation, (ii) the capital interest or profits interest of such partnership, or (iii) the beneficial interest of such trust or estate, is owned directly or indirectly" by, *inter alia*, a plan fiduciary or employer;  "an employee, officer or director or a 10 percent or more shareholder" of an employer whose employees are covered by the plan; and "a relative" of any interested party. 29 U.S.C. § 1002(14)(A), (C), (E), (F), (G), (H). "Relative" means "a spouse, ancestor, lineal descendant, or spouse of a lineal descendant." 29 U.S.C. § 1002(15).

91.     Defendants Kevin Kruse, Tony Correia, Robert Berczynski, Aubrey Michael, Chad Pinter, Ronald Kruse, Larry Leitner, Hal Reed, Mark La Bounty, Bob Reeves, Kruse Investment Company, Correia Trust, La Bounty Trust, R. Kruse Trust, Jordyn Kruse, Ryan Kruse, D. Kruse Trust, Kruse Feed & Supply Profit Sharing Plan, Lambert Trust, Kruse Family Trust, Mello Trust, Kruse Western, and KW Enterprises are or were each "parties in interest" within the meaning of

ERISA § 3(14) for the reasons described above at paragraphs 14-21-26-27, 29-30, 34-38, 41-42, 49-50, and 52-53.

92.    As part of the integrated 2022 ESOP Transaction, the ESOP directly or indirectly transferred assets or value to the parties in interest named in this Count, each of whom received substantial consideration from the Transaction.

93.    Additionally, the parties named in this Count had actual or constructive knowledge that the 2022 ESOP Transaction constituted a direct or indirect transfer or exchange of property between the ESOP and themselves as parties in interest, and/or an indirect transfer of the Plan's assets to them. Further, they had actual or constructive knowledge that the amount paid to the Plan in the 2022 ESOP Transaction was less than the fair market value of its shares and not in the best interests of the ESOP, given their senior leadership roles in the Company or its subsidiaries such as Western Milling. As parties-in-interest, the Defendants named in this count are liable for knowing participation in violations of ERISA § 406(a)(1)(A) and (D), 29 U.S.C. § 1106(a)(1)(A) and (D).

94.    As Trustee, GreatBanc caused the Western Milling ESOP to engage in a prohibited transaction in violation of ERISA §§ 406(a)(1)(A) and (D), 29 U.S.C. §§ 1106(a)(1)(A) and (D), by approving the 2022 ESOP Transaction, authorizing payment of consideration to the above parties-in-interest in connection with that Transaction, and failing to conduct a diligent, prudent, and unbiased investigation into the 2022 ESOP Transaction.  As such, it is also liable for this prohibited transaction.

95.    The ill-gotten proceeds received by the parties-in-interest from the 2022 ESOP Transaction were deposited in their personal accounts and remain in their possession. Plaintiff seeks appropriate equitable relief from Defendants Kevin Kruse, Tony Correia, Robert Berczynski, Aubrey Michael, Chad Pinter, Ronald O. Kruse, Larry Leitner, Hal Reed, Mark La Bounty, Bob Reeves, Kruse Investment Company, Correia Trust, La Bounty Trust, R. Kruse Trust, Jordyn Kruse, Ryan Kruse, D. Kruse Trust, Kruse Feed & Supply Profit Sharing Plan, Lambert Trust, Kruse Family Trust, Mello Trust, Kruse Western, and KW Enterprises as parties in interest, including the disgorgement of any ill-gotten gains they received in connection with the ESOP Transaction.

96.     In addition, GreatBanc is obligated to restore the Plan's losses, and the above-named Defendants are also subject to make whole relief in the form of surcharge. Further, other equitable and remedial relief is also available to address the alleged prohibited transaction under ERISA.

## COUNT II

### Prohibited Transaction in Violation of ERISA § 406(b), 29 U.S.C. §§ 1106(b)

(Against the Board Defendants)

97.     Plaintiff incorporates the preceding paragraphs as though set forth herein.

98.     ERISA § 406(b)(1), 29 U.S.C. § 1106(b)(1), prohibits a fiduciary from "deal[ing] with the assets of the plan in his own interest or for his own account[.]" 29 U.S.C. § 1106(b)(1).

99.     ERISA § 406(b)(2), 29 U.S.C. § 1106(b)(2), mandates that a plan fiduciary shall not "act in any transaction involving the plan on behalf of a party (or represent a party) whose interests are adverse to the interests of the plan or the interests of its participants[.]" 29 U.S.C. § 1106(b)(2).

100.    ERISA § 406(b)(3), 29 U.S.C. § 1106(b)(3), prohibits a plan fiduciary from "receiv[ing] any consideration for his own personal account from any party dealing with such plan in connection with a transaction involving the assets of the plan." 29 U.S.C. § 1106(b)(3).

101.    As alleged above, the Board Defendants are fiduciaries of the ESOP within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21).

102.    The 2022 ESOP Transaction involved the Plan and assets of the Plan because the ESOP sold its ownership interest in the Company and consideration for that ownership interest was paid to the ESOP and related parties in connection with the sale.

103.    Defendants Kevin Kruse, Tony Correia, Robert Berczynski, Aubrey Michael, Chad Pinter, Ronald Kruse, Larry Leitner, and Hal Reed were members of the Board of Directors at the time of the 2022 Transaction. Each of these Defendants (and/or their family trusts of which they are trustees and beneficiaries) received consideration in connection with the 2022 ESOP Transaction, and dealt with Plan assets and/or acted as adverse parties to the ESOP in connection with the 2022 ESOP Transaction in violation of ERISA § 406(b), 29 U.S.C. § 1106(b).

104.    Defendants Kevin Kruse, Tony Correia, Robert Berczynski, Aubrey Michael, Chad Pinter, Ronald Kruse, Larry Leitner, and Hal Reed violated ERISA §§ 406(b)(1)-(3), 29 U.S.C. §§

1106(b)(1)-(3), for which they are liable as fiduciaries to disgorge the profits they received in connection with the 2022 ESOP Transaction, restore the losses to the Plan and its participants and beneficiaries, and for other appropriate remedial and equitable relief.

**COUNT III**
**Breach of Fiduciary Duties Under ERISA §§ 404(a)(1)(A) and (B),**
**29 U.S.C. §§ 1104(a)(1)(A) and (B)**

(Against GreatBanc)

105.    Plaintiff incorporates the preceding paragraphs as though set forth herein.

106.    ERISA § 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A), requires that a plan fiduciary act "for the exclusive purpose of providing benefits to participants and the beneficiaries of the plan."

107.    ERISA § 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B) requires that a plan fiduciary act with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.

108.    In the context of a sale transaction involving an ESOP, the duties of loyalty under ERISA § 404(a)(1)(A) and prudence under ERISA § 404(a)(1)(B) require a fiduciary to undertake an appropriate investigation to ensure that the ESOP and its participants receive adequate consideration for the ESOP's assets and the participants' accounts in the ESOP.

109.    GreatBanc was required to undertake an appropriate and independent investigation of the fair market value of the ESOP's ownership interest in Kruse Western stock and determine the fairness of the proposed transaction to the ESOP from a financial point of view before approving the 2022 ESOP Transaction in order to fulfill its fiduciary duties. Among other things, GreatBanc was required to conduct a thorough and independent review of any "independent appraisal," to make certain that reliance on any and all valuation experts' advice was reasonably justified under the circumstances of the 2022 ESOP Transaction; and to make an honest, objective effort to read and understand the valuation reports and opinions and question any methods and assumptions that did not make sense. If after a careful review of the valuations and a discussion with the experts, there were still uncertainties, GreatBanc should have had a second firm review the valuation reports.

110.    An appropriate investigation would have revealed that the valuation used for the 2022 ESOP Transaction was flawed, the price ultimately paid to the ESOP did not reflect the fair market value of equity held by the ESOP, and the 2022 ESOP Transaction was not fair to the ESOP from a financial point of view.

111.    An appropriate investigation further would have revealed that the 2022 ESOP Transaction was intended to serve the interests of the Company insiders by paying off their notes, and providing additional "bonus" compensation to them, instead of fairly compensating the ESOP and ESOP participants and beneficiaries for their equity stake in the Company.

112.    An appropriate investigation would have revealed that the 2022 ESOP Transaction was not in the best interest of the ESOP participants and beneficiaries.

113.    By causing the ESOP to engage in the 2022 ESOP Transaction, and failing to restore the losses caused thereby, GreatBanc breached its fiduciary duties under ERISA § 404(a)(1)(A) and (B), 29 U.S.C. § 1104(a)(1)(A), (B), and caused losses to the ESOP and the individual retirement accounts of the participants and beneficiaries in the ESOP.  GreatBanc is liable to restore these losses and for other equitable and remedial relief under ERISA.

**COUNT IV**
**Failure to Monitor in Violation of ERISA §§ 404(a)(1)(A) and (B)**
**29 U.S.C. §§ 1104(a)(1)(A) and (B)**

(Against the Board Defendants)

114.    Plaintiff incorporates the preceding paragraphs as though set forth herein.

115.    ERISA § 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A), requires that a plan fiduciary act "for the exclusive purpose of providing benefits to participants and the beneficiaries of the plan."

116.    ERISA § 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B) requires that a plan fiduciary act with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.

117.    ERISA § 404(a)(1)(A) and (B) provide that any fiduciary with the power to appoint and/or remove other fiduciaries has an obligation to undertake an appropriate investigation to make certain that the appointed fiduciary is qualified to serve in the position as fiduciary, and to monitor

the appointed fiduciary to ensure that it remains qualified to act as fiduciary and is acting in compliance with the terms of the plan and in accordance with ERISA. If the appointed fiduciary has violated or continues to violate ERISA, the monitoring fiduciary must remove the appointed fiduciary and attempt to restore any losses to the plan caused by the ERISA violations.

118.    GreatBanc was appointed by the Board, and the Board Defendants had a duty to monitor GreatBanc.

119.    The Board Defendants breached their duties under ERISA § 404(a)(1)(A) & (B), 29 U.S.C. § 1104(a)(1)(A) & (B), because they failed to monitor GreatBanc in connection with the 2022 ESOP Transaction to ensure that GreatBanc was fulfilling to its fiduciary duties, that the ESOP did not engage in a prohibited transaction, that the ESOP and its participants and beneficiaries received fair market value for their equity interest in the Company, and that Company insiders were not unjustly enriched.

120.    The Board Defendants' breaches of their fiduciary duties caused losses to the ESOP and the financial interests of the participants and beneficiaries in the ESOP.  The Board Defendants are liable to restore these losses and for other equitable and remedial relief under ERISA.

**COUNT V**
**Co-Fiduciary Liability Under ERISA §§ 405(a)(1) and (a)(3),**
**29 U.S.C. §§ 1105(a)(1) and (a)(3)**

(Against the Board Defendants)

121.    Plaintiff incorporates the preceding paragraphs as if set forth herein.

122.    As alleged above, the Board Defendants and GreatBanc were fiduciaries of the Plan.

123.    ERISA § 405(a), 29 U.S.C. § 1105(a), provides that "a fiduciary with respect to a plan shall be liable for a breach of fiduciary responsibility of another fiduciary with respect to the same plan in the following circumstances:

(1)    if he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach;

(2)    if, by his failure to comply with [29 U.S.C. §] 1104(a)(1) … in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach; or

(3)    if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach.

124.    The Board Defendants knowingly participated in GreatBanc's fiduciary violations, and knew that GreatBanc's actions violated ERISA.  The Board appointed GreatBanc as the ESOP Trustee, and each of the Board members were familiar with GreatBanc's role in ensuring that the 2022 ESOP Transaction was fair and lawful (and their own monitoring role as appointing fiduciaries).  The Board Defendants were also intimately familiar with the terms of the 2022 ESOP Transaction, the finances of the Company, the inadequacy of the consideration paid to the ESOP and ESOP participants and beneficiaries in connection with the 2022 ESOP Transaction, and the substantial prohibited consideration paid to Company insiders (including themselves and their affiliated trusts and family members).  Yet, the Board Defendants nevertheless joined GreatBanc in approving the 2022 ESOP Transaction, allowed GreatBanc to approve that Transaction in violation of its fiduciary duties. Based on their insider knowledge, the Board Defendants knew or should have known the 2022 ESOP Transaction was unlawful and should not have been approved.

125.    The Board Defendants' failure to comply with their own fiduciary duties in approving the 2022 ESOP Transaction and failing to properly monitor and oversee GreatBanc enabled GreatBanc to breach its own fiduciary duties and allow the 2022 ESOP Transaction to go forward in violation of ERISA.

126.    The Board Defendants had knowledge of GreatBanc's fiduciary breach in approving the 2022 ESOP Transaction, but took no action to remedy its breach and actually joined in the breach as alleged herein.  Nor did any of the Board Defendants return the prohibited compensation that they received.

127.    As a result, under ERISA § 405(a)(1)-(3), 29 U.S.C. § 1105(a)(1)-(3), the Board Defendants are liable as co-fiduciaries for GreatBanc's fiduciary violations.

## COUNT VI
### Equitable Relief Under ERISA § 502(a)(3), 29 U.S.C § 1132(a)(3)

(Against the Seller Defendants, Board Defendants, Executive Management Team, Kruse Western and KW Enterprises)

128.    Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

129.    Under 29 U.S.C. § 1132(a)(3), a court may award "other appropriate equitable relief" to redress "any act or practice" that violates ERISA. A defendant may be held liable under this section regardless of whether it is a fiduciary. A non-fiduciary transferee of ill-gotten assets of the Plan is subject to equitable disgorgement of those assets if the non-fiduciary had actual or constructive knowledge of the circumstances that rendered the transaction or payment unlawful.

130.    The Seller Defendants participated in and profited from the fiduciary breaches and prohibited transaction alleged herein with actual or constructive knowledge that they were receiving prohibited consideration in connection with the 2022 ESOP Transaction and that the compensation paid to the ESOP and its participants and beneficiaries was inadequate.

131.    Pursuant to 29 U.S.C. § 1132(a)(3), the Seller Defendants should be required to disgorge the consideration they have received as a result of the 2022 ESOP Transaction. The Seller Defendants had actual or constructive knowledge that the 2022 ESOP Transaction was an unlawful prohibited transaction involving the sale and/or redemption of all of the ESOP's shares in Kruse Western back to the Company as a party-in-interest, and related compensation paid to other Plan fiduciaries and parties-in-interest for less than fair market value.  All of the Seller Defendants knowingly participated in the 2022 ESOP Transaction because they received excessive profits from it with actual or constructive knowledge of its unlawfulness.

132.    The Seller Defendants had actual or constructive knowledge that the 2022 ESOP Transaction was unlawful based on, *inter alia*, (i) their personal familiarity with the original 2015 ESOP Transaction and their ongoing financial stake in the Company; (ii) their personal familiarity with the payment terms of the 2022 ESOP Transaction and how it would benefit them; (iii) their access to the books and records of Western Milling and/or Kruse Western; (iv) their inside knowledge of confidential financial and business information pertaining to the same; (v) their status as officers, directors, or members of the Kruse family to the extent they acted in such capacities; (vi) their close personal and/or family relationships to other Company insiders; and (vii) the *Zavala* lawsuit that put them on notice of their legal obligations with respect to the ESOP and associated transactions and notice that Kruse Western sponsored the ESOP and that both Kruse Western and KW Enterprises were parties-in-interest.

133.    All consideration to the Seller Defendants in connection with the 2022 ESOP Transaction is in the current possession of the Seller Defendants and/or traceable.

134.    The Seller Defendants cannot lawfully retain this consideration under ERISA, and must disgorge it.

135.    The Board Defendants and Executive Management Team, as well as Kruse Western and KW Enterprises, had at least as much insider knowledge as the Seller Defendants, and also had actual or constructive knowledge of the circumstances that rendered the 2022 ESOP Transaction and the associated consideration to themselves unlawful.  Accordingly, they also must disgorge the consideration paid to them in connection with the 2022 ESOP Transaction, which is in their current possession and/or traceable, even if they are not deemed to be fiduciaries of the ESOP.

## VIII.  PRAYER FOR RELIEF

Plaintiff, on behalf of himself, the Plan, and the Class, prays that judgment be entered against Defendants on each Count and that the Court grant the following relief:

A.    Declare that GreatBanc and the Board Defendants have breached their fiduciary duties under ERISA in connection with the 2022 ESOP Transaction;

B.    Declare that Defendants Kevin Kruse, Tony Correia, Robert Berczynski, Aubrey Michael, Chad Pinter, Ronald O. Kruse, Larry Leitner, Hal Reed, Mark La Bounty, Bob Reeves, Kruse Investment Company, Correia Trust, La Bounty Trust, R. Kruse Trust, Jordyn Kruse, Ryan Kruse, D. Kruse Trust, Kruse Feed & Supply Profit Sharing Plan, Lambert Trust, Kruse Family Trust, Mello Trust, Kruse Western, KW Enterprises, and GreatBanc have each engaged in a prohibited transaction in violation of ERISA § 406(a), 29 U.S.C. § 1106(a) in connection with the 2022 ESOP Transaction;

C.    Declare that the Board Defendants have each engaged in a prohibited transaction in violation of ERISA § 406(b), 29 U.S.C. § 1106(b) in connection with the 2022 ESOP Transaction;

D.    Declare that the Seller Defendants, Board Defendants, Executive Management Team, Kruse Western, and KW Enterprises knowingly participated in and profited from the fiduciary breaches and prohibited transaction alleged herein with actual or constructive knowledge that they were receiving unlawful compensation;

E.      Order each fiduciary found to have violated ERISA, including breaching his/her/its fiduciary duties to the ESOP, to jointly and severally pay such amount to restore all losses resulting from their violations and to disgorge all profits made through use of assets of the ESOP;

F.      Order that Defendants provide other appropriate equitable relief to the ESOP, including but not limited to reforming the 2022 ESOP Transaction, providing an accounting for profits, surcharge, and/or imposing a constructive trust or equitable lien on any funds wrongfully held by any of the Defendants;

G.      Order Defendants to provide all accountings necessary to determine the amounts Defendants must remit to the ESOP to restore losses and to disgorge any profits obtained from the use of ESOP assets or other violations of ERISA § 404 and 406, 29 U.S.C. § 1104 and 1106;

H.      To the extent necessary, issue an injunction or order creating a constructive trust or successor trust into which all ill-gotten gains, fees and/or profits paid to any of the Defendants in violation of ERISA shall be placed for the sole benefit of the ESOP's participants and beneficiaries. This includes, but is not limited to, the ill-gotten gains, fees and/or profits paid to any of the Defendants that have been wrongly obtained as a result of a fiduciary breach, prohibited transaction, or other violation of ERISA;

I.      Order pursuant to ERISA § 206(d)(4) that any amount to be paid to the ESOP accounts of the Class can be satisfied by using or transferring any breaching fiduciary's ESOP account in the Plan (or the proceeds of that account) to the extent of that fiduciary's liability.

J.      Require Defendants to pay attorneys' fees and costs pursuant to ERISA § 502(g), 29 U.S.C. § 1132(g), and/or order payment of fees and expenses to Plaintiff's counsel on the basis of the common benefit or common fund doctrine out of any money recovered for the Class;

K.      Award pre-judgment interest and post-judgment interest; and

L.      Award such other and further relief that the Court determines that Plaintiff and the Class are entitled to pursuant to ERISA § 502(a)(2) and/or § 502(a)(3), 29 U.S.C. § 1132(a)(2) and/or 1132(a)(3) or pursuant to Rule 54(c) of the Federal Rules of Civil Procedure or that is equitable and just.

DATED: June 9, 2025                    Respectfully Submitted,


By:     /s/ Nina Wasow
        Daniel Feinberg (SBN No. 135983)
        Nina Wasow (SBN No. 242047)
        FEINBERG, JACKSON, WORTHMAN
        & WASOW, LLP
        2030 Addison Street, Suite 500
        Berkeley, CA 94704
        Tel. (510) 269-7998
        Fax (510) 269-7994
        dan@feinbergjackson.com
        nina@feinbergjackson.com

        Michelle C. Yau (*pro hac vice* application forthcoming)
        COHEN MILSTEIN SELLERS & TOLL PLLC
        1100 New York Ave. NW, Suite 500
        Washington, DC 20005
        Tel. (202) 408-4600
        Fax (202) 408-4699
        myau@cohenmilstein.com

        Kai Richter (*pro hac vice* application forthcoming)
        Jacob Schutz (*pro hac vice* application forthcoming)
        COHEN MILSTEIN SELLERS & TOLL PLLC
        400 South Fourth Street #401-27
        Minneapolis, MN 55415
        Tel. (612) 807-1575
        Fax (202) 408-4699
        krichter@cohenmilstein.com
        jschutz@cohenmilstein.com

        *Counsel for Plaintiff and the Proposed Class*