Daniel Feinberg (SBN No. 135983)
Nina Wasow (SBN No. 242047)
FEINBERG, JACKSON,
WORTHMAN & WASOW LLP
2030 Addison Street, Suite 500
Berkeley, CA 94704
Tel. (510) 269-7998
Fax (510) 269-7994
dan@feinbergjackson.com
nina@feinbergjackson.com

Michelle C. Yau (admitted *pro hac vice*)
COHEN MILSTEIN SELLERS & TOLL
PLLC
1100 New York Ave. NW, Suite 800
Washington, DC 20005
Tel. (202) 408-4600
Fax (202) 408-4699
myau@cohenmilstein.com

Kai Richter (admitted *pro hac vice*)
Jacob Schutz (admitted *pro hac vice*)
COHEN MILSTEIN SELLERS & TOLL
PLLC
400 South Fourth Street #401-27
Minneapolis, MN 55415
Tel. (612) 807-1575
Fax (202) 408-4699
krichter@cohenmilstein.com
jschutz@cohenmilstein.com

*Counsel for Plaintiffs and the Proposed Class*

Lars C. Golumbic (pro hac vice)
Andrew D. Salek-Raham (pro hac vice)
Hannah M. Stephens (pro hac vice)
GROOM LAW GROUP, CHTD.
1701 Pennsylvania Ave., NW
Suite 1200
Washington, D.C. 20006
Tel. (202) 857-0620
Fax (202) 659-4503
lgolumbic@groom.com
asalek-raham@groom.com
hstephens@groom.com

Natasha S. Fedder (SBN 325919)
Foundation Law Group LLP
4100 Alameda Ave., 3d Floor
Burbank, CA 91505
Tel. (610) 246-3623
natasha@foundationlaw.com

*Counsel for Defendant GreatBanc Trust
Company*

Additional attorneys of record and signature
blocks appear at the conclusion of this filing

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE DAVALOS, JOE PEDRO, and STEVE CELENTANO, individually and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>   v.<br><br>GREATBANC TRUST COMPANY, THE KRUSE WESTERN BOARD OF DIRECTORS, KEVIN KRUSE, THE KRUSE FAMILY TRUST, TONY CORREIA, THE TONY F. AND | Case No. 1:25-cv-00706-KES-SKO<br><br>**JOINT STATEMENT RE: DISCOVERY DISAGREEMENT**<br><br>Hearing Date: December 10, 2025<br><br>Time: 9:30 am<br><br>Courtroom: 7 |

MARY A. CORREIA REVOCABLE FAMILY
TRUST, ROBERT BERCZYNSKI, AUBREY
MICHAEL, CHAD PINTER, RONALD KRUSE,
THE RONALD O. KRUSE FAMILY TRUST,
LARRY LEITNER, HAL REED, MARK LA
BOUNTY, THE LA BOUNTY FAMILY
TRUST, BOB REEVES, KRUSE INVESTMENT
COMPANY, INC., THE 2007 KNUDSEN
FAMILY TRUST, THE JEFFREY AND KAREN
FONTANELLA TRUST, JORDYN KRUSE,
RYAN KRUSE, THE DOUGLAS T. KRUSE
TRUST, THE DAVIS FAMILY TRUST,
SECAP, THE KRUSE FEED AND SUPPLY,
INC. PROFIT SHARING PLAN, THE
LAMBERT FAMILY REVOCABLE TRUST,
WARREN HUTCHINGS, DOREEN
HUTCHINGS, SIDNEY EARP, RICHARD
EARP, MARK KREBSBACH, NICKIE
KREBSBACH, THE JOSEPH M. AND DEBRA
L. GUENLEY REVOCABLE LIVING TRUST,
THE HOLDSWORTH FAMILY REVOCABLE
TRUST, DANIEL J. MARTIN, THE MONTE
AND SUSAN MELLO TRUST, KRUSE
WESTERN, INC., and KRUSE WESTERN
ENTERPRISES, LLC,

                    Defendants.

Pursuant to Local Rule 251, Plaintiffs and Defendants in the above-captioned action (collectively, the "Parties") hereby submit this Joint Statement re: Discovery Disagreement in connection with Plaintiffs' Notice of Motion and Motion for Jurisdictional Discovery (ECF 88).

## DETAILS OF CONFERENCES BETWEEN THE PARTIES

On November 7, 2025, Plaintiffs' undersigned counsel wrote to Defendants' counsel to "request that Defendants stipulate to limited jurisdictional discovery" on the grounds that "Defendants have raised arguments relating to Article III standing in their motions to dismiss." Specifically, Plaintiffs indicated that they "seek production of [] documents previously produced by Defendants under the auspices of FRE 408." In support of their request, Plaintiffs noted that "there is no burden for Defendants to re-produce these documents" and asserted that "Defendant GreatBanc has made a factual attack on Plaintiffs' Article III standing by relying on extensive facts not alleged in the Amended Complaint."

Upon receipt of Plaintiffs' request for jurisdictional discovery, Defendant GreatBanc's counsel stated that "we'll confer with our client and get back to you."[1] In the meantime, GreatBanc asked Plaintiffs to "specifically identify the 'extensive facts not alleged in the Amended      Complaint' that [Plaintiffs believe] are included in GreatBanc's standing argument." In response, Plaintiffs stated that "[t]he clearest example is pp. 10 – 12 of GreatBanc's MPA" (Memorandum of Points and Authorities, ECF 80-1), and identified four documents submitted with GreatBanc's MPA: two Form 5500s cited on pages 10 through 12, the Confidential Information Statement ("CIS") cited on page 13, and a promissory note cited on page 19.

The following Thursday (November 13, 2025), GreatBanc's counsel stated that "We disagree that jurisdictional discovery is warranted and do not consent to Plaintiff[s'] request, which mischaracterizes GreatBanc's motion." GreatBanc's counsel indicated that "GreatBanc is asserting a facial standing challenge" and "[t]he motion does not dispute Plaintiff's [sic] facts or rely on evidence outside the pleadings." With respect to the items listed by Plaintiffs, GreatBanc further explained its position as follows:

---

[1] Counsel for the other Defendants did not respond.

"You pointed to three citations in GreatBanc's motion—citations to Forms 5500 (p. 10-11), the Confidential Information Statement ("CIS") (p. 13), and the 2015 seller notes (p. 19)—that you say converted GreatBanc's standing argument (p. 9-16) from a facial to a factual attack. That is incorrect.

- **Form 5500s.** The Complaint expressly references and quotes Forms 5500. *See, e.g.*, Compl. ¶ 71 (stating that "[t]he Plan's Form 5500 filing for year-end 2022 describes certain aspects of the 2022 ESOP Transaction" before quoting from the Form 5500 verbatim). They thus are not extrinsic to the Complaint; they are incorporated by reference into it. *See Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010). They are also public records subject to judicial notice, and courts routinely consider them at the pleadings stage in ERISA cases. *See, e.g.*, *Hutchins v. HP, Inc.*, 737 F. Supp. 3d 851, 858 (N.D. Cal. 2024).

- **CIS citation.** The citation you identify is a scrivener's error. The surrounding text makes clear the citation should have been to Paragraph 4 of the Complaint, which addresses the same insider-payment allegations discussed in the brief. *Compare* Compl. ¶ 4 *with* Mem. at 13. GreatBanc is prepared to file a corrected brief if needed. In any event, the CIS is incorporated by reference in the Complaint; it is not extrinsic to it. *See, e.g.*, ¶ 72 (stating that "[the Board Defendants'] disclosures to ESOP participants acknowledged the Board members' financial interests in the 2022 ESOP Transaction based on their outstanding notes" before quoting from the CIS verbatim).

- **2015 seller notes.** These appear only in GreatBanc's Rule 12(b)(6) arguments concerning prohibited-transaction and fiduciary-breach claims on page 19. They play no role in the Article III standing analysis on pages 9-16."

Ultimately, GreatBanc's standing argument turns solely on the legal insufficiency of the Complaint's allegations, not on any fact that discovery could illuminate. Jurisdictional discovery is unwarranted.

The Parties met and conferred via videoconference on November 18, 2025, but were unable to resolve their discovery dispute. Plaintiffs offered to provide a short list of requested documents (instead of all documents previously produced subject to FRE 408) as a compromise, but Defendants did not agree to this proposal.

## NATURE OF THE ACTION

This is a putative class action involving breach of fiduciary duty and prohibited transaction claims under the Employee Retirement Income Security Act ("ERISA"). In summary, the named Plaintiffs – Jose Davalos, Joe Pedro, and Steve Celentano – are former employees of Western Milling LLC ("Western Milling") and were vested participants in the Western Milling Employee Stock Ownership Plan ("ESOP" or "Plan"). Amended Complaint ("AC"), ECF 73-1 at ¶¶ 11-13. Plaintiffs challenge a transaction in 2022 involving the sale of Company stock held by the ESOP.

***Plaintiffs' Additional Factual Statement***

Plaintiffs allege that the ESOP and its participants did not receive fair market value for their equity interest in Western Milling's parent company, Kruse Western, Inc. ("Kruse Western"), when the Company was sold in 2022 (the "2022 ESOP Transaction" or "Transaction"). ¶ 4. Plaintiffs allege that the 2022 ESOP Transaction was a prohibited transaction under 29 U.S.C. § 1106, *see id.* (Counts 1-2), that the fiduciaries responsible for the ESOP breached their fiduciary duties under 29 U.S.C. § 1104 in connection with the Transaction, *id.* (Counts 3-4), that each fiduciary is liable for the breaches of its co-fiduciaries under 29 U.S.C. § 1105, *id.* (Count 5), and that other financially interested parties (including non-fiduciaries) are subject to equitable relief under 29 U.S.C. § 1132(a)(3) and *Harris Tr. & Sav. Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238 (2000), *id.* (Count 6).

The main area of factual dispute is whether adequate consideration was paid to the ESOP and its participants in connection with the 2022 ESOP Transaction. Under ERISA, transactions involving the sale of company stock by an employee benefit plan are generally prohibited unless they qualify for the applicable exemption in 29 U.S.C. § 1108(e). One of the conditions of this exemption is that the transaction involve "adequate consideration." *Id.*

***Defendants' Additional Factual Statement***

This is the second lawsuit between the parties regarding the ESOP. Mr. Davalos and two other former participants previously filed a lawsuit styled *Zavala, et al. v. GreatBanc Trust Company, et al.* (No. 1:19-cv-239-DAD-SKO) ("*Zavala*"), which alleges that Defendants are liable under ERISA for the ESOP's alleged overpayment for shares of Western Milling's parent company, Kruse Western, Inc. ("Kruse Western"), in a 2015 stock purchase transaction. The *Zavala* parties held settlement discussions and attended a mediation in 2024. During the course of those discussions, Plaintiffs raised the possibility of filing a second suit—the present *Davalos* action—alleging that the ESOP and its participants did not receive fair market value for their equity interest Kruse Western when the company's assets were sold in connection with a 2022 transaction to a third party buyer (the "2022 ESOP Transaction" or "Transaction"). AC ¶ 4.

To facilitate the parties' efforts to reach a global, out-of-court resolution to both the *Zavala* and *Davalos* actions, Defendants agreed to provide Plaintiffs with certain documents concerning the

DM_US 215953997-1.120895.0011

2022 Transaction "for settlement purposes only." As counsel for Defendants summarized the parties' agreement:

> Plaintiffs' counsel agreed to destroy the material and not use it for any purpose other than our settlement discussions. That concept was expressly agreed to by [Plaintiffs' counsel] . . . . Accordingly, any purported factual basis for [the *Davalos* lawsuit] must be wholly based on material not provided to you in the settlement context. We will be reviewing any complaint you file with an eye towards that and will proceed with all available recourse should that agreement be breached.

Exhibit A, 5/27/25 E-mail from L. Calkins to M. Yau, et al. Plaintiffs filed the *Davalos* action after the parties were unable to reach an agreement. The *Zavala* matter remains pending before this Court.

## CONTENTIONS OF THE PARTIES

The contentions of the Parties relating to the instant discovery dispute are set forth in their respective memoranda below.

### Plaintiffs' Memorandum

Under Ninth Circuit case law, jurisdictional discovery is appropriate when facts relevant to jurisdiction are disputed or discovery would be useful to the district court in determining its jurisdiction. Jurisdictional discovery is especially important where, as here, Defendants make a factual attack on Plaintiffs' standing. Defendant GreatBanc's Article III standing argument disputes Plaintiffs' factual allegations in the Amended Complaint about financial injury based on several documents that are not part of the pleadings or incorporated by reference into the Amended Complaint, and each of the other sets of Defendants have incorporated its standing arguments by reference. *See* ECF 79-1 at 2 n.1; ECF 82-1 at 5. *See* ECF 79-1 at 2 n.1; ECF 82-1 at 5. Plaintiffs have proposed limited jurisdictional discovery that would not impose any burden on Defendants – Plaintiffs seek to have Defendants produce documents that were previously provided to Plaintiffs' counsel subject to FRE 408. Indeed, Defendant GreatBanc submitted two of these documents in support of its Article III standing argument. *See* ECF 80-03; ECF 80-06. The Court should order Defendants to produce the rest of the previously produced documents so that they can be part of the record for the Court to decide Article III standing.

I.    **Jurisdictional Discovery Is Appropriate and Necessary to Fairly Address Defendants' Jurisdictional Arguments**

DM_US 215953997-1.120895.0011

The Ninth Circuit has long recognized that "it is clear that a court may allow discovery to aid in determining whether it has … subject matter jurisdiction." *Wells Fargo & Co. v. Wells Fargo Express Co.,* 556 F.2d 406, 430 n. 24 (9th Cir. 1977). A district court has "broad discretion" to permit or deny such jurisdictional discovery. *Andrews v. Pride Indus., Inc.*, 2015 WL 1014133, at *5 (E.D. Cal. Mar. 6, 2015) (citing *Laub v. U.S. Dep't of Interior,* 342 F.3d 1080, 1093 (9th Cir. 2003)). However, "discovery should ordinarily be granted where pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary." *Laub*, 342 F.3d at 1093 (quoting *Butcher's Union Local No. 498 v. SDC Inv., Inc.,* 788 F.2d 535, 540 (9th Cir.1986)).

Whenever discovery would be "useful to establish federal subject matter jurisdiction," the denial of such discovery constitutes an abuse of discretion. *Laub*, 342 F.3d at 1093; *see also Burri Law P.A. v. Skurla*, 35 F.4th 1207, 1218 (9th Cir. 2022) (vacating district court's refusal to grant jurisdictional discovery); *Wells Fargo & Co.*, 556 F.2d at 430 n. 24 (same); *Expert Microsystems v. Univ. of Chicago*, 2009 WL 1949103, at *3 (E.D. Cal. July 6, 2009) ("It is an abuse of discretion to dismiss for lack of subject matter jurisdiction without giving plaintiff reasonable opportunity, if requested, to conduct discovery for this purpose."). "Indeed, it may be an abuse of discretion for a court to deny jurisdictional discovery where such discovery '*might* well demonstrate' jurisdictionally relevant facts." *Calix Networks, Inc. v. Wi-Lan, Inc.*, 2010 WL 3515759, at *3 (N.D. Cal. Sept. 8, 2010) (emphasis in original) (quoting *Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.,* 328 F.3d 1122, 1135 (9th Cir. 2003) (emphasis added)).[2]

That is precisely the case here. Just as in *Laub*, Plaintiffs seek "a 'detailed accounting of [a] transaction[] undertaken' by the defendants" for purposes of responding to the motion to dismiss. *Calix Networks, Inc. v. Wi-Lan, Inc.*, 2010 WL 3515759, at *3 (N.D. Cal. Sept. 8, 2010) (quoting *Laub*, 342 F.3d 1093). To deny such discovery where Defendants' Article III standing argument is

---

[2] *See also Situ v. Leavitt*, 2006 WL 8460081, at *2 (N.D. Cal. Aug. 30, 2006) ("[E]ven if Plaintiffs' requested discovery may not definitively establish this Court's jurisdiction, it is sufficient that the discovery seems reasonably likely to lead to evidence that may raise one or more disputed issues of fact on the jurisdictional issues raised by Defendant's motion to dismiss."); *McCreary v. Aetna Life Ins. Co.*, 2009 WL 1940026, at *1 (D. Nev. July 2, 2009) ("[Plaintiff] must be given an opportunity to conduct discovery on whether he has suffered an injury-in-fact. … If [Plaintiff] can show Aetna withheld monies purportedly owed to him, McCreary could demonstrate an economic injury sufficient to fulfill the injury-in-fact element of constitutional standing.").

focused on the accounting for the 2022 ESOP Transaction and whether the ESOP received fair market value would be highly prejudicial (to the extent the Court determines the existing factual allegations are not already sufficient to support standing) and an abuse of discretion. *See Rowlands v. Hanson*, 205 F.3d 1352, 1997 WL 1217937, at *1 (9th Cir. Dec. 17, 1999). "The court must weigh the prejudice to the complaining party if discovery is denied." *Andrews*, 2015 WL 1014133, at *5 (citing *Laub,* 342 F.3d at 1093). On the existing record, it is hardly "clear that further discovery would not demonstrate facts sufficient to constitute a basis for jurisdiction." *See Ader v. Belimed, Inc.*, 2012 WL 3234206, at *5 n.3 (E.D. Cal. Aug. 6, 2012).[3]

Notably, this is not a situation where the request for discovery is "based on little more than a hunch that it might yield jurisdictionally relevant facts." *See Boschetto v. Hansing,* 539 F.3d 1011, 1020 (9th Cir. 2008) (citing *Butcher's Union,* 788 F.2d at 540). Nor are Plaintiffs seeking such discovery "merely to conduct 'a fishing expedition.'" *Cal. Capital Ins. Co. v. Broan-Nutone, LLC*, 2021 WL 5494892, at *5 (E.D. Cal. Nov. 23, 2021) (Oberto, J.) (quoting *Mackovich v. United States*, 2008 WL 2053978, *1 (E.D. Cal. May 13, 2008)). To the contrary, Plaintiffs seek production of (1) a ***limited set of documents*** (2) that Defendants ***previously made available*** for settlement purposes (3) that Plaintiffs ***already know*** contain useful information relating to the Transaction (but cannot share with the Court unless the documents are re-produced for litigation purposes).[4] This is eminently reasonable and appropriate – especially because Defendants have already used some of these documents to support their motions to dismiss.

---

[3] Courts in this Circuit have held that a plaintiff need not make out a prima facie case of jurisdiction before it can obtain jurisdictional discovery. *Calix Networks*, 2010 WL 2515759, at *4 (citing *eMag Solutions, LLC v. Toda Kogyo Corp.,* 2006 WL 3783548, at *2 (N.D. Cal. Dec. 21, 2006) (explaining that "[i]t would ... be counterintuitive to require a plaintiff, *prior to* conducting discovery, to meet the same burden that would be required to defeat a motion to dismiss"); *Focht v. Sol Melia S.A.*, 2010 WL 3155826, at *2 (N.D. Cal. Aug.9, 2010)). In any event, Plaintiffs have done so based on the facts set forth in the Amended Complaint.

[4] Defendants complain in their memorandum below that "Plaintiffs do not identify what facts they expect to uncover" in the documents.  That is because Plaintiffs have been scrupulous in not revealing the factual contents of those documents given that they have only been made available subject to FRE 408. Plaintiffs would be happy to describe the documents and their contents in detail at the hearing if Defendants have no objection.

Although the HK Defendants argue below that "Plaintiffs' reasoning relies entirely on arguments regarding what is included in GreatBanc's memorandum," they **joined** GreatBanc's jurisdictional arguments. *See* ECF 79-1 at 2 n.1. For the same reason, it is not accurate for the McDermott Defendants to state that the basis for their motion is "confined to the four corners of the Complaint and does not rely on extrinsic evidence." They, too, joined GreatBanc's jurisdictional arguments. *See* ECF 82-1 at 5.

## II. Defendants' Characterization of their Standing Argument as a "Facial" Challenge to Jurisdiction Is Not Dispositive of Whether Discovery Should Be Allowed

Defendants have taken the position that they are immune from jurisdictional discovery because they assert a "facial" challenge to Article III standing rather than a "factual" challenge." *See supra* at 2. However, this argument is neither accurate nor legally sound.

Unlike in a true facial challenge, Defendants do not accept the veracity of Plaintiffs' allegations of injury as pled. To the contrary, the fundamental premise of their standing argument is that Plaintiffs are **incorrect** in alleging that "Plaintiffs and the ESOP … suffered financial harm because they failed to receive fair value for the ESOP's 2,000,000 shares of Company stock," and that such allegations lack "*factual* support." ECF 80-1 at 9 (emphasis added). Indeed, Defendants specifically attempt to rebut Plaintiffs' allegations by relying on evidence **outside** the pleadings to argue that "the ESOP received tremendous value from the 2022 Transaction." ECF 80-1 at 10. This extrinsic evidence includes not only multiple Form 5500 filings with the Department of Labor, *see id.*, but also the CIS purporting to summarize the Transaction, *id.* at 5-7, 13, 20-21, 23, and one of the loan notes from the Transaction, *id.* at 19. Defendants should not be allowed to challenge Plaintiffs' factual allegations (including their allegations of injury) based on these outside materials, which include their own self-serving characterizations of the Transaction and excerpts of the Transaction documents that they included with their Rule 408 production, without producing the full set of Transaction documents for purposes of litigation (as opposed to settlement). *See Estate of Graham v. Sotheby's, Inc.*, 178 F. Supp. 3d 974, 997 (C.D. Cal. 2016), *aff'd part and rev'd in part on other grounds*, 894 F.3d 1061 (9th Cir. 2018) ("Defendant Sotheby's asks the Court to decide the dispute on one-sided evidence without permitting Plaintiffs to conduct any discovery. The Court declines to do so.").

Defendant GreatBanc's justifications for its reliance on these materials (*see supra* at 2) do not hold water. <u>*First*</u>, Defendants rely on Form 5500s for **2020** and **2021**, *see* ECF 80-2 ¶¶ 5-6 & Exs. 2-3, not the one for 2022 that is referenced in the Amended Complaint. <u>*Second*</u>, GreatBanc's citation to the CIS was hardly a "scrivener's error." It was physically introduced as Exhibit 1 to its counsel's declaration, *see* ECF 80-2 ¶ 4 & Ex.1, and the subject of a motion to seal, *see* ECF 81. Although GreatBanc purports to fix this "scrivener's error" on the same day that this discovery dispute statement was submitted by omitting the reference to the CIS on page 13 of its "amended" MPA in support of its motion to dismiss, see ECF 91-1, the fact remains that the CIS is still referenced throughout the amended MPA (eighteen times!), *id*. at 5, 6, 7, 20, 21, 23, and GreatBanc has not sought to retract the CIS from the record that it submits in support of its motion. In addition, the HK Defendants and the McDermott Defendants incorporated by reference the Article III standing argument in GreatBanc's original MPA - which includes a cite to the CIS. <u>*Finally*</u>, there is no dispute that GreatBanc also introduced one of the loan notes that was paid off, *see* ECF 80-2 ¶ 7 & Ex. 4, and referenced those loan notes in the standing section of its brief (which the other Defendants joined), *see* ECF 80-1 at 13.

Even if Defendants had mounted a strictly facial challenge to standing without contesting the factual accuracy of Plaintiffs' allegations (which is not the case here), Defendants' argument in opposition to jurisdictional discovery is legally unsound. The Ninth Circuit has never held that the availability of jurisdictional discovery hinges on whether a defendant's attack on the jurisdictional allegations in the complaint is characterized as "facial" or "factual." To the contrary, the Ninth Circuit allows for jurisdictional discovery even when the facts are ***not*** "controverted," if the Court concludes that "a more satisfactory showing of the facts is necessary." *Laub*, 342 F.3d at 1093.

Consistent with this standard, another court in this Circuit has expressly "disagree[d] … that the dichotomy between facial and factual complaint-challenges" that Defendants attempt to draw here "necessarily implies early discovery is permissible in factual *but not* facial challenges." *Tschakert v.*

DM_US 215953997-1.120895.0011

1  *Hart Energy Publ'g., LLLP*, 2011 WL 3568117, at *4 (S.D. Cal. Aug. 15, 2011).[5] "Defendants' con-

2  clusion ignores this Court's 'obligation' to investigate and ensure its own jurisdiction and ignores the

3  long-held jurisdictional maxim that jurisdiction cannot depend on stipulation or waiver of the parties."

4  *Tschakert*, 2011 WL 3568117, at *4 (citing *Janakes v. U.S. Postal Service,* 768 F.2d 1091, 1095 (9th

5  Cir.1985)). Whether jurisdictional discovery is allowed "should not depend on how Defendants char-

6  acterize their jurisdictional challenge." *Id.*

7      Indeed, "jurisdictional discovery is especially appropriate in a case such as this one where the

8  jurisdictional issue overlaps with the merits of the claims." *Finkelstein v. Guardian Life Ins. Co. of*

9  *Am.*, 2007 WL 1345228, at *4 n.1 (N.D. Cal. May 8, 2007). Here, both the question of injury-in-fact

10  and the merits of the underlying claims hinge on whether the ESOP and its participants received ade-

11  quate consideration for Company stock. In such a situation, the jurisdictional determination should

12  await determination of the relevant facts after discovery. *See Augustine v. U.S.*, 704 F.2d 1074, 1077

13  (9th Cir. 1983) ("[W]here the jurisdictional issue and substantive issues are so intertwined that the

14  question of jurisdiction is dependent on the resolution of factual issues going to the merits, the juris-

15  dictional determination should await a determination of the relevant facts …"); *Data Disc., Inc. v.*

16  *Systems Tech. Assocs., Inc.*, 557 F.2d 1280, 1285 n.2 (9th Cir. 1977) ("[W]here the jurisdictional facts

17  are enmeshed with the merits, the district court may decide that the plaintiff … should be required

18  only to establish a prima facie showing of jurisdictional facts with affidavits and perhaps ***discovery***

19  ***materials***.") (emphasis added).[6]

20

---

21  [5] *See also Tutor Perini Bldg. Corp. v. New York City Regional Ctr., LLC*, 2020 WL 7711629, *3
22  (S.D.N.Y. Dec. 29, 2020) ("Defendants' attempt to draw a bright line between the availability of such
   discovery in facial versus factual challenges to the Court's subject-matter jurisdiction is unpersua-
23  sive."). Plaintiffs acknowledge that other non-controlling cases have reached an opposite conclusion,
   but believe those cases were wrongly decided and inconsistent with *Laub's* alternative grounds for
24  allowing jurisdictional discovery (as well as the Court's considerable discretion to do so).

25  [6] *See also, e.g., Clough v. Highway Auto. Pros LLC*, 2023 WL 4291826, at *4 (C.D. Cal. May 23,
   2023) (""[W]hen the jurisdictional facts are inextricably intertwined with those central to the merits,
26  the court should resolve the relevant factual disputes only after appropriate discovery."); *Ruffino v.*
   *United States*, 374 F. Supp. 3d 961, 967 (E.D. Cal. 2019) ("Where the intertwined factual issues are
27  disputed, discovery should be allowed"); *Updateme Inc. v. Axel Springer SE*, 2018 WL 11352694, at
   *2 (N.D. Cal. Mar. 1, 2018) ("[T]he merits of plaintiff's complaint are intertwined with the question
28  of the Court's jurisdiction. … Discovery concerning the relationship of defendants will both assist
   with the merits of the case and will determine whether the Court has jurisdiction over defendant").

9    JOINT STMNT RE: DISCOVERY DISPUTE

1    Courts recognize that "ERISA plaintiffs generally lack the inside information necessary to

2    make out their claims in detail unless and until discovery commences." *Chea v. Lite Star ESOP*

3    *Comm.*, 2024 WL 280771, at *11 (E.D. Cal. Jan. 25, 2024) (citing *Allen v. GreatBanc Tr. Co.*, 835

4    F.3d 670, 678 (7th Cir. 2016)); *see also McMorgan & Co.*, 916 F. Supp. at 974 (recognizing that

5    "requisite jurisdictional facts" in ERISA matter "may be in the possession of [defendant]"). To the

6    extent that discovery is needed to bolster Plaintiffs' jurisdictional allegations and provide further detail

7    for them, it should be allowed. *See, e.g., Smugmug, Inc. v. Virtual Photo Store, LLC*, 2009 WL

8    2488003, at *3 (N.D. Cal. Aug.13, 2009) (granting jurisdictional discovery request "because the ex-

9    isting record is insufficient to support personal jurisdiction and [p]laintiff has demonstrated that it can

10   supplement its jurisdictional allegations through discovery"); *Trintec Indus., Inc. v. Pedre Promo-*

11   *tional Prods., Inc.,* 395 F.3d 1275, 1283 (Fed. Cir. 2005) (holding plaintiff was entitled to jurisdic-

12   tional discovery where existing record was inadequate to support personal jurisdiction but jurisdic-

13   tional allegations could be supplemented through discovery); *accord Burri Law*, 35 F.4th at 1218 ("If

14   the district court determines … that the FAC, as presently constituted, lacks sufficient factual allega-

15   tions to support an exercise of jurisdiction …, the district court should decide whether Burri should be

16   permitted … jurisdictional discovery").

17                                                    * * *

18    For the foregoing reasons, Plaintiffs respectfully request that the Court grant their request for

19   jurisdictional discovery. Defendants' argument that the documents cited in GreatBanc's motion were

20   incorporated by reference in the Amended Complaint is not correct because none of the documents

21   were referenced in the Amended Complaint. "It is improper to consider for the truth of the matter

22   asserted the contents of the exhibits that have been judicially noticed." *Kloss v. Argent Tr. Co.*, 2023

23   WL 8603131, at *3 (D. Minn. Dec. 12, 2023) (denying request for judicial notice of documents that

24   are "not necessarily embraced by the complaint" on motion to dismiss ESOP claims). Further, alt-

25   hough Defendants complain that this would be unfair because the documents were initially produced

26   subject to FRE 408, Defendants opened the door to their          production for litigation purposes by

27   selectively introducing a curated portion of those documents in support of their motions and making

28   related fact arguments. Even in the absence of the prior production (which simply goes to show there

is **no** burden to Defendants in making the documents available), Plaintiffs would be entitled to jurisdictional discovery relating to the basic documents underpinning the Transaction, including (among other things) the full Transaction binder and any fair market value determination or appraisal upon which Defendant GreatBanc relied.

### **Defendants' Memorandum**

Plaintiffs' request for "jurisdictional discovery" should be denied for the straightforward reason that Defendants have raised a facial Article III challenge. A facial standing challenge does not dispute the truth of any jurisdictional facts; it argues that, even assuming the complaint's allegations are true, they fail to establish standing as a matter of law. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004) ("In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction.").

Because the inquiry is limited to the four corners of the complaint and documents that are judicially noticeable or incorporated by reference, courts—including those in the Ninth Circuit—regularly deny jurisdictional discovery in precisely this posture. *See, e.g.*, *Engel v. United States*, 702 F. Supp. 3d 986, 1000 (D. Nev. 2023) (denying request for jurisdictional discovery "because Defendant does not rely on any non-judicially noticeable extrinsic evidence to demonstrate the absence of jurisdiction"); *Lu v. Cent. Bank of Republic of China (Taiwan)*, 610 F. App'x 674, 675 (9th Cir. 2015) ("Defendants' motion to dismiss mounted a facial attack on Lu's jurisdictional allegations, so further discovery was not relevant to the motion."); *Ctr. for Biological Diversity v. Army Corps of Eng'rs*, No. CV 14-1667 PSG (CWX), 2014 WL 12923196, at *7 (C.D. Cal. Sept. 26, 2014) ("Plaintiffs' request for jurisdictional discovery is inappropriate because Defendants and Defendant-Intervenor assert facial, not factual, attacks on jurisdiction."); *St. Clair v. City of Chico*, 880 F.2d 199, 201–02 (9th Cir. 1989) (denying request for jurisdictional discovery where the defendant's sanding challenge was facial and did not rely on non-judicially noticeable extrinsic evidence). Plaintiffs cannot use "jurisdictional discovery" to rehabilitate deficient allegations, and their request should be denied.

Indeed, the very cases Plaintiffs cite compel this result. Those decisions address circumstances "when facts relevant to jurisdiction are *disputed*." *Supra* at 6, citing *Laub v. U.S. Dep't of*

*Interior*, 342 F.3d 1080, 1093 (9th Cir. 2003) (emphasis added). In *Laub*, for example, the disputed fact was whether the challenged land and water acquisitions were genuinely independent of a federally coordinated program—an issue that turned on the extent of federal involvement in the transactions. 342 F.3d at 1093. Because that factual dispute could not be resolved on the pleadings and additional discovery might affect the jurisdictional analysis, the Ninth Circuit permitted limited jurisdictional discovery. *Id.* In *Andrews v. Pride Industries*, No. 2:19-cv-00910-TLN-KJN, 2020 WL 4001461 (E.D. Cal. July 15, 2020), the dispute turned on factual assertions about the defendant's operational practices and whether those facts brought the claims within federal jurisdiction. Because the jurisdictional analysis depended on clarifying those underlying facts—matters not evident from the pleadings—the court allowed limited discovery to resolve those factual uncertainties before determining whether jurisdiction existed. *Id.* at *5. And in *Burri Law PA v. Skurla*, 35 F.4th 1207 (9th Cir. 2022), the jurisdictional question hinged on a dispute about where the alleged harm occurred—an issue requiring factual development beyond the pleadings. Because those contested facts could bear on the jurisdictional analysis, the Ninth Circuit held that targeted jurisdictional discovery was appropriate. *Id.* at 1217–18.

In all of the cases Plaintiffs cite, courts have permitted limited discovery because jurisdiction hinges on factual questions outside the pleadings—citizenship, the amount in controversy, minimum contacts with the forum—that are susceptible to proof and may lie within the defendant's possession. By contrast, Plaintiffs' failure to plead an Article III injury-in-fact is a defect in the allegations themselves, not in the underlying facts. In arguing that Plaintiffs lack Article III standing, Defendants do not dispute any factual allegation—only that the facts Plaintiffs chose to plead do not plausibly establish harm. *See* Dkt. 80-1 at 8–16. Because no factual dispute exists for discovery to resolve, Plaintiffs' request must be denied.

Contrasting Plaintiffs' request with those that courts *have* granted underscores why jurisdictional discovery is inappropriate here. For example, in *Skurla*, the plaintiff sought narrowly tailored discovery aimed at resolving a specific, disputed factual issue—whether the defendant had sufficient contacts with the forum to support personal jurisdiction. *See* Dkt. 31, *Burri Law PA v. Skurla*, No. 2:20-cv-1692 (D. Ariz. Nov. 9, 2020). Here, by contrast, Plaintiffs do not identify what facts they

DM_US 215953997-1.120895.0011

expect to uncover or what jurisdictional question those facts would answer. Instead, they seek open-ended, pleadings-stage discovery of the sort courts routinely reject as a fishing expedition. *See, e.g.*, *Haddock v. Countrywide Bank N.A.*, No. 14-CV-6452, 2015 WL 9257316, at \*24 (C.D. Cal. Oct. 27, 2015) (denying discovery request supported by "nothing beyond vague, conclusory assertions" that such discovery would reveal facts establishing personal jurisdiction).

Plaintiffs attempt to evade this outcome by asserting (1) that Defendants have mounted a factual, rather than facial, challenge to standing, and (2) that, in any event, courts within the Ninth Circuit permit jurisdictional discovery even in response to facial challenges. Plaintiffs are wrong on both scores.

Plaintiffs begin by labeling Defendants' standing challenge as "factual" because it asserts a lack of "factual support" for any injury, but that misconstrues the argument: Defendants are not disputing facts supporting Plaintiffs' injury—they are explaining that there are no such facts alleged at all. *Mar. for Our Lives Idaho v. McGrane*, 697 F. Supp. 3d 1029, 1038 (D. Idaho 2023) ("A factual attack requires a *factual dispute*.") (emphasis added). In other words, Defendants are not "attempt[ing] to rebut Plaintiffs' allegations" of harm because there are no non-conclusory allegations to rebut.

And, as explained during the meet-and-confer process, Defendants rely on no extrinsic evidence to mount this challenge. Plaintiffs point to references in GreatBanc's motion to dismiss memorandum to "multiple Form 5500 filings with the Department of Labor," but those forms "are matters of public record not subject to reasonable dispute and of which courts in this district routinely take judicial notice." *Hutchins v. HP Inc.*, 767 F. Supp. 3d 912, 920 (N.D. Cal. 2025). Reliance on judicially noticeable materials does not convert a facial challenge into a factual one. *Engel*, 702 F. Supp. 3d at 1000. Otherwise, all of the cases where courts are asked to take judicial notice of Forms 5500 would trigger jurisdictional discovery, and none do. Indeed, although citations to Forms 5500 are commonplace in motions to dismiss ERISA class actions, Plaintiffs do not—because they cannot—point to a single instance in which a court allowed jurisdictional discovery based on a defendant's citation of a Form 5500.

Plaintiff next point to Defendants' invocation of the Confidential Information Statement, but

DM_US 215953997-1.120895.0011

the only time this document is referenced in connection with Defendants' standing argument is on page 13 of GreatBanc's motion to dismiss memorandum, and the citation is clearly a scrivener's error. It follows a discussion of what Plaintiffs alleged (or failed to allege) in the First Amended Complaint about the value the ESOP and its participants received for their company shares. Dkt. 80-1 at 13.[7] Plaintiffs contend that this was no error because the document "was physically introduced as Exhibit 1 to its counsel's declaration." True, but that was done in support of Defendants' reliance on that document elsewhere in their motion to dismiss in support of the Rule 12(b)(6) argument that Plaintiffs had failed to state a claim for a prohibited transaction, *see* Dkt. 80-1 at 20, not the separate Rule 12(b)(1) argument that Plaintiffs lacked standing. Moreover, the Confidential Information Statement is incorporated by reference into the First Amended Complaint, as Defendants have explained, *see* Dkt. 80-1 at 5 n.3, so it is not an extrinsic document whose consideration by the Court warrants jurisdictional discovery.[8]

In any event, Plaintiffs already possess the Confidential Information Statement. All ESOP participants, including Plaintiffs, received a copy of the document, which contained information about the proposed 2022 Transaction ahead of a participant vote on the deal. Dkt. 80-1 at 1. Thus, Plaintiffs' request for jurisdictional discovery based on a supposed need to obtain a document they already independently have—indeed, Plaintiffs ***quoted it*** in the Complaint, *see, e.g.*, Dkt. 73-1 ¶¶ 70, 71—rings hollow.

---

[7] As Defendants previously proposed to Plaintiffs, GreatBanc Trust Company has filed a corrected memorandum in support of its motion to dismiss to resolve this error, concurrent with submission of this joint statement.

[8] Plaintiffs' assertion that the documents cited in GreatBanc's motion to dismiss, including the Confidential Information Statement, were not incorporated by reference because "none of [them] were referenced in the Amended Complaint" misses the mark. That the First Amended Complaint did not *name* the Confidential Information Statement is beside the point; Plaintiffs admittedly quoted from it verbatim and relied on its contents to support their allegations. Incorporation by reference does not turn on whether a document is formally cited or even referenced in a complaint, but whether the pleading necessarily relies on it or whether it is central to the pleading's allegations. *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018). Having invoked the Confidential Information Statement's contents to advance their theory, Plaintiffs cannot now disclaim its incorporation.

DM_US 215953997-1.120895.0011

Finally, Plaintiffs claim Defendants "referenced . . . loan notes in the standing section" of GreatBanc's motion to dismiss memorandum. Plaintiffs have it exactly backwards: Defendants are not asking the Court to examine the notes to determine whether they support standing. Rather, Great-Banc memorandum simply observed that—even though Plaintiffs themselves referenced the notes in the First Amended Complaint—they alleged no facts about their terms, repayment, or effect on the ESOP that might establish an injury-in-fact. Moreover, the only instance in GreatBanc's motion to dismiss memorandum citing the notes is on page 19, the portion of the memorandum arguing for dismissal under Rule 12(b)(6) for failure to state a claim, and not in the Rule 12(b)(1) section regarding standing.

In short, Plaintiffs identify no instance in which Defendants rely on non-judicially noticeable materials outside the pleadings, because there is none.

Plaintiffs' second attempt to sidestep denial of their jurisdictional-discovery request is to argue that it makes no difference whether Defendants mounted a facial or factual attack because courts in the Ninth Circuit supposedly do not recognize the distinction. But that assertion ignores the many courts that have denied jurisdictional discovery precisely because a standing challenge is facial. One such case is *Lu v. Central Bank of Republic of China (Taiwan)*, 610 F. App'x 605 (9th Cir. 2015), an unpublished Ninth Circuit decision that may still be cited for its persuasive value under Ninth Circuit Rule 36-3. There, the court affirmed the denial of jurisdictional discovery where the defendants' Rule 12(b)(1) motion presented a facial attack on standing, underscoring that discovery is unwarranted when the alleged jurisdictional defect inheres in the pleadings themselves rather than in any factual dispute.

Plaintiffs' only authority from within the Ninth Circuit for their claim that the facial/factual distinction does not matter is *Tschakert v. Hart Energy Publishing, LLLP*, No. 10-cv-2598-L (WMc), 2011 WL 3568117, at *4 (S.D. Cal. Aug. 15, 2011)—an unpublished order by a magistrate judge that predates *Lu* and carries only limited persuasive value. And *Tschakert* is easily distinguished. There, the plaintiff sought discovery to determine the citizenship of two entities because diversity jurisdiction turned on a concrete factual question: the multilayered membership structure of several corporate structures, including "unknown individuals and business associations" whose citizenship could alone

DM_US 215953997-1.120895.0011

defeat jurisdiction. *Id.* at 2–3. As the court emphasized, the defendants' constituents spanned at least five layers of ownership and the plaintiff had no way to ascertain those facts without limited discovery. *Id.* at 3–4. In other words, the jurisdictional inquiry in *Tschakert* turned on factual matters exclusively within defendants' possession—facts that, if uncovered, could establish or defeat subject-matter jurisdiction. Here, by contrast, Plaintiffs identify no factual dispute of any kind. Their Article III problem arises not from hidden jurisdictional facts but from their own failure to allege an injury-in-fact in the first place.

Plaintiffs argue that jurisdictional discovery is warranted because, in their view, resolution of the jurisdictional issue "overlaps" with the merits of their claims. Not so, as the very cases Plaintiffs invoke make clear. Take *Augustine v. United States*, 704 F.2d 1074 (9th Cir. 1983). There, the jurisdictional question was when the plaintiff's Federal Tort Claims Act claim accrued for statute-of-limitations purposes. Accrual depended on when the plaintiff discovered his injury, and that discovery date in turn depended on whether Air Force dentists properly diagnosed his condition and adequately warned him of the need for further treatment—questions that "go to the heart" of his claim that the dentists were medically negligent by misdiagnosing his condition. *Id.* at 1078. The jurisdictional issue in *Augustine* overlapped with the merits because the existence of the injury itself depended on whether the defendants had been negligent. Nothing of the sort is true here. Determining whether Plaintiffs have adequately alleged an injury-in-fact requires the Court to assess only the sufficiency of Plaintiffs' own allegations, not to resolve any element of their ERISA claims. Because the standing inquiry here does not turn on the merits, *Augustine* and related cases offer no support for Plaintiffs' request for jurisdictional discovery.

Plaintiffs' final argument turns the standing inquiry on its head. It is true that, because of the information asymmetry between plan participants and fiduciaries, courts have allowed ERISA plaintiffs to plead circumstantial facts supporting an inference of imprudence even without access to internal fiduciary processes. *See, e.g.*, *Allen v. GreatBanc Tr. Co*., 835 F.3d 670, 678 (7th Cir. 2016) (recognizing plaintiffs "ERISA plaintiffs generally lack the inside information"). But that leniency concerns the standard for pleading a breach, not the requirement to adequately allege injury-in-fact. Nothing in any of the personal-jurisdiction cases Plaintiffs cite suggests that ERISA plaintiffs may

DM_US 215953997-1.120895.0011

use discovery to manufacture a harm they failed to plead. Allowing Plaintiffs to obtain jurisdictional discovery every time they fail to plead an injury-in-fact simply because Defendants possess information Plaintiffs lack would erase the fundamental distinction between standing and the merits, and between the pleadings stage and discovery—rewarding every plaintiff's failure to identify an injury with early-stage discovery to find one. That is precisely what Article III forbids.

Not only do Plaintiffs fail to establish any reason why they should be entitled to jurisdictional discovery generally, but they also neglect to articulate any grounds for obtaining such discovery from the HK Defendants. Plaintiffs make a blanket assertion that they are entitled to jurisdictional discovery from *all* Defendants, but do not make any arguments specific to the HK Defendants or otherwise make any reference to the arguments in the HK Defendants' motion to dismiss memorandum. Instead, Plaintiffs' reasoning relies entirely on arguments regarding what is included in GreatBanc's memorandum. Plaintiffs offer no colorable argument that they are entitled to jurisdictional discovery from the HK Defendants, and for this additional reason, their request for jurisdictional discovery should be denied.

The McDermott Defendants' separate motion likewise provides no legitimate basis for Plaintiffs' request for jurisdictional discovery. [9] As explained in the McDermott Defendants' motion, Plaintiffs have not alleged any concrete injury that is traceable to the 28 separate McDermott Defendants, most of which are alleged to have been merely passive minority investors with no involvement in the ESOP or the 2022 Transaction. See ECF 82-1 at 3-5, 10–11, 19. This is a facial challenge under Rule 12(b)(1), not a factual attack. ECF 82-1 at 3–5. Even assuming the First Amended Complaint's allegations are true, Plaintiffs have still failed to establish Article III standing. *Id.* Because the McDermott Defendants' challenge is confined to the four corners of the Complaint and does not rely on

---

[9] The "McDermott Defendants" are Robert Berczynski, Aubrey Michael, Chad Pinter, Mark La Bounty, Ronald Kruse, the Jeffrey & Karen Fontanella Trust, the La Bounty Family Trust, Ronald O. Kruse Family Trust, Jordyn Kruse, Ryan Kruse, the Douglas T. Kruse Trust, the Davis Family Trust, SECAP, the Kruse Feed & Supply, Inc. Profit Sharing Plan, the Lambert Family Revocable Trust, Warren Hutchings, Doreen Hutchings, Sidney Earp, Richard Earp, Mark Krebsbach, Nickie Krebsbach, the Joseph & Debra Guenley Revocable Living Trust, the Holdsworth Family Revocable Trust, Daniel J. Martin, the Monte and Susan Mello Trust, Larry Leitner, Hal Reed, and Bob Reeves.

extrinsic evidence, Plaintiffs cannot cure these pleading deficiencies via improper jurisdictional discovery. Plaintiffs' demand that the 28 separate McDermott Defendants provide jurisdictional discovery is meritless.

Plaintiffs' request for "jurisdictional discovery" is not merely unfounded—awarding it would create a chilling effect on early settlement discussions. Defendants voluntarily produced a substantial volume of documents during settlement negotiations expressly and repeatedly on the condition that they were "for settlement purposes only," confidential, and not to be used "for any purpose" in the litigation. *See* Ex. B, Letter from Andrew D. Salek-Raham to Pls.' Counsel (Jan. 17, 2025) (documents "produced . . . for settlement purposes only and . . . marked confidential"); Ex. C, Letter from Chelsea A. McCarthy to Dan Feinberg (Jan. 29, 2025) (documents provided solely "to facilitate . . . settlement discussions" and to be destroyed after negotiations, with Plaintiffs prohibited from using them "for any purpose" in the litigation); Ex. A, E-mail from L. Calkins to M. Yau (May 27, 2025) ("Plaintiffs' counsel agreed to destroy the material and not use it for any purpose other than our settlement discussions. . . . Accordingly, any purported factual basis for [the *Davalos* lawsuit] must be wholly based on material not provided to you in the settlement context.").

Now, on the flimsiest of pretexts, Plaintiffs attempt to re-characterize those same materials as "jurisdictional" evidence to be compelled through discovery—effectively demanding production of documents they already possess but agreed they could not use. The Court should not reward Plaintiffs' "fingers crossed" promise by allowing them to convert the parties' good-faith settlement dialogue into a backdoor route to pleadings stage merits discovery. Plaintiffs invited these confidentiality protections, they accepted them, and they cannot now cast them off because it serves a newfound strategic purpose.

//

//

//

//

//

//

* * *

For the foregoing reasons, Defendants respectfully request that the Court deny Plaintiffs' request for jurisdictional discovery.

DATED: November 26, 2025                    Respectfully Submitted,

By: /s/ Kai Ritcher
Michelle C. Yau (admitted pro hac vice)
COHEN MILSTEIN SELLERS & TOLL PLLC
1100 New York Ave. NW, Suite 500
Washington, DC 20005
Tel. (202) 408-4600
Fax (202) 408-4699
myau@cohenmilstein.com

Kai Richter (admitted pro hac vice)
Jacob Schutz (admitted pro hac vice)
COHEN MILSTEIN SELLERS & TOLL PLLC
400 South Fourth Street #401-27
Minneapolis, MN 55415
Tel. (612) 807-1575
Fax (202) 408-4699
krichter@cohenmilstein.com
jschutz@cohenmilstein.com

/s/ Daniel Feinberg
Daniel Feinberg (SBN No. 135983)
Nina Wasow (SBN No. 242047)
FEINBERG, JACKSON, WORTHMAN & WASOW LLP
2030 Addison Street, Suite 500
Berkeley, CA 94704
Tel. (510) 269-7998
Fax (510) 269-7994
dan@feinbergjackson.com
nina@feinbergjackson.com

*Counsel for Plaintiffs and the Proposed Class*

/s/ Andrew D. Salek-Raham
Lars C. Golumbic (pro hac vice)
Andrew D. Salek-Raham (pro hac vice)
Hannah M. Stephens (pro hac vice)
GROOM LAW GROUP, CHTD.
1701 Pennsylvania Ave., NW
Suite 1200
Washington, D.C. 20006
Tel. (202) 857-0620
Fax (202) 659-4503
lgolumbic@groom.com
asalek-raham@groom.com
hstephens@groom.com

Natasha S. Fedder (SBN 325919)
Foundation Law Group LLP
4100 Alameda Ave., 3d Floor
Burbank, CA 91505
Tel. (610) 246-3623
natasha@foundationlaw.com

*Counsel for Defendant GreatBanc Trust Company*

/s/ Chelsea Ashbrook McCarthy
Howard A. Sagaser, State Bar No. 72492
SAGASER, WATKINS & WIELAND, PC
5260 North Palm Avenue, Suite 400
Fresno, California 93704
Tel. (559) 421-7000
Fax (559) 473-1483

Lynn Estes Calkins (Pro Hac Vice)
HOLLAND & KNIGHT, LLP
800 17th Street N.W., Suite 1100
Washington, D.C. 20006
Tel. (202) 457-7041
Fa (202) 955-5564

19        JOINT STMNT RE: DISCOVERY DISPUTE

Chelsea Ashbrook McCarthy (Pro Hac Vice)
HOLLAND & KNIGHT, LLP
150 North Riverside Plaza, Suite 2700
Chicago, IL 60606
Tel. (312) 263-3600
Fax (312) 578-6666

*Attorneys for Defendants Kevin Kruse, The
Kruse Western, Inc. Board of Directors, Tony
Correia, Kruse Investment Company, Inc.,
Tony F. & Mary A. Correia Revocable Family
Trust, 2007 Knudsen Family Trust, Kruse
Family Trust, Kruse Western, Inc., and Kruse
Western Enterprises, LLC*

/s/ Julian André
Theodore M. Becker (pro hac vice)
Julian L. André (SBN 251120)
Brandon Roker (SBN 205292)
McDermott Will & SCHULTE LLP
2049 Century Park East, Suite 3200
Los Angeles, CA  90067-3206
Tel: (310) 277-4110
Fax (310) 277-4730
tbecker@mwe.com
jandre@mwe.com
broker@mwe.com

*Counsel for Defendants Robert Berczynski,
Aubrey Michael, Chad Pinter, Mark La
Bounty, Ronald Kruse, the Jeffrey & Karen
Fontanella Trust, the La Bounty Family Trust,
the Ronald O. Kruse Family Trust, Jordyn
Kruse, Ryan Kruse, the Douglas T. Kruse
Trust, the Davis Family Trust, SECAP, the
Kruse Feed & Supply, Inc. Profit Sharing
Plan, the Lambert Family Revocable Trust,
Warren Hutchings, Doreen Hutchings, Sidney
Earp, Richard Earp, Mark Krebsbach, Nickie
Krebsbach, the Joseph & Debra Guenley Rev-
ocable Living Trust, the Holdsworth Family
Revocable Trust, Daniel J. Martin, the Monte
And Susan Mello Trust, Larry Leitner, Hal
Reed, and Bob Reeves*

# EXHIBIT A

**From:** lynn.calkins@hklaw.com <lynn.calkins@hklaw.com>
**Sent:** Tuesday, May 27, 2025 4:45 PM
**To:** myau <myau@cohenmilstein.com>
**Cc:** Nina Wasow <nina@feinbergjackson.com>; Salek-Raham, Andrew (ASalek-Raham@groom.com) <ASalek-Raham@groom.com>; dan@feinbergjackson.com; Stephens, Hannah (HStephens@groom.com) <HStephens@groom.com>; Becker, Ted <tbecker@mwe.com>; Andre, Julian <jandre@mwe.com>; Kai Richter <krichter@cohenmilstein.com>; Jacob Schutz <jschutz@cohenmilstein.com>; Nguyen, Justine (JNguyen@groom.com) <JNguyen@groom.com>; Sara.Benson@hklaw.com; chelsea.mccarthy@hklaw.com; Golumbic, Lars (lgolumbic@groom.com) <LGolumbic@groom.com>
**Subject:** Kruse Western

Michelle:  Thank you for the courtesy of the telephone call last week.  You indicated that you intend to file a lawsuit relating to purported ERISA violations in connection with the Viserion transaction.  As I relayed, we do not believe there is any basis for such a lawsuit, but I am writing now to remind you that all of the material provided to you during our settlement discussions was provided to you for settlement purposes only.  Plaintiffs' counsel agreed to destroy the material and not use it for any purpose other than our settlement discussions.  That concept was expressly agreed to by your co-counsel, Nina Wasow, on December 14, 2022 for the production of documents produced for settlement purposes and reiterated in both of our production letters dated January 29, 2025 and March 7, 2025.  Accordingly, any purported factual basis for this new lawsuit must be wholly based on material not provided to you in the settlement context.  We will be reviewing any complaint you file with an eye towards that and will proceed with all available recourse should that agreement be breached.  Regards, Lynn

**Lynn Estes Calkins** | **Holland & Knight**
Deputy Section Leader, Litigation
Holland & Knight LLP
800 17th Street N.W., Suite 1100 | Washington, District of Columbia 20006
511 Union St. Suite 2700 | Nashville, Tennessee 37219
DC Phone 202.457.7041 | NSH Phone 615.850.8959 | Cell 301.461.6153
lynn.calkins@hklaw.com | www.hklaw.com

Add to address book | View professional biography

NOTE: This e-mail is from a law firm, Holland & Knight LLP ("H&K"), and is intended solely for the use of the individual(s) to whom it is addressed. If you believe you received this e-mail in error, please notify the sender immediately, delete the e-mail from your computer and do not copy or disclose it to anyone else. If you are not an existing client of H&K, do not construe anything in this e-mail to make you a client unless it contains a specific statement to that effect and do not disclose anything to H&K in reply that you expect it to hold in confidence. If you properly received this e-mail as a client, co-counsel or retained expert of H&K, you should maintain its contents in confidence in order to preserve the attorney-client or work product privilege that may be available to protect confidentiality.

# EXHIBIT B

# GROOM LAW GROUP

Andrew D. Salek-Raham
(202) 861-5408
asalek-raham@groom.com

January 17, 2025

**Via Email**

Nina Wasow
Feinberg, Jackson, Worthman & Wasow LLP
2030 Addison St., Suite 500
Berkeley, CA 94704

Kai H. Richter
Cohen Milstein Sellers & Toll PLLC
400 South 4th St., Suite 401-27
Minneapolis, MN 55415

Chelsea A. McCarthy
Holland & Knight LLP
150 North Riverside Plaza, Suite 2700
Chicago, IL 60606

Theodore M. Becker
McDermott Will & Emery LLP
444 West Lake Street
Chicago, IL 60606

    Re:    *Zavala v. Kevin Kruse, et al.,* No. 1:19-CV-00239-KES-SKO (E.D. Cal.)

Dear Counsel:

    We received a copy of Plaintiffs' "WM Viserion Transaction Document Request List" from counsel for the Company Defendants. With this letter, GreatBanc Trust Company ("Great-Banc") is producing documents in response to Nos. 1, 4, and 6 on the list. These documents are being produced for settlement purposes only and are marked confidential.

    Please use the below link to access these documents, Bates labeled GBFRE_000813-GBFRE_000973.

- Link: https://groom.sharefile.com/d-s6249afaf464146d0a884f214d18cf34c
- Password: kemf6nH2Z9rS3umw

    We understand that Stout will also be providing documents in response to No. 1 on the list in the near term.

GROOM LAW GROUP

January 17, 2025
Page 2


        If you have any trouble accessing the link or downloading the production, please let us know.

                                        Sincerely,

                                        */s/ Andrew D. Salek-Raham*

                                        Andrew D. Salek-Raham

# EXHIBIT C

# Holland & Knight

150 North Riverside Plaza, Suite 2700 | Chicago, IL 60606 | T 312.263.3600 | F 312.578.6666
Holland & Knight LLP | www.hklaw.com

Chelsea A. McCarthy
+1 312-715-5768
chelsea.mccarthy@hklaw.com

January 29, 2025

**VIA E-MAIL**

Mr. Dan Feinberg
Feinberg Jackson Worthman & Wasow LLP
2030 Addison St., Suite 500
Berkeley, CA 94704

## CONFIDENTIAL SETTLEMENT DISCUSSION PER RULE 408

Re:    *Armando Zavala, et al. v. GreatBanc Trust Company, et al.*

Dear Dan:

To facilitate our ongoing settlement discussions, Plaintiffs have asked for various documents to be able to understand (a) how the funds flowed from Viserion to the ESOP participants and (b) what value was ascribed to various assets that were not included in the Viserion transaction. You provided the parties with a list of specific document requests, which you believe will provide you with the understanding sought.

We have assessed your requests and coordinated with GreatBanc to provide you with the below-referenced documents regarding the Viserion transaction ***for settlement purposes only.*** Copies of these documents are attached hereto and bates labeled KWFRE408_000237–249. Upon completion of our settlement discussions, these documents should be destroyed and not used by Plaintiffs further in the ongoing litigation or for any purpose.

In the order of your requests, on behalf of Kruse Western, we provide (or identify who will be providing) the following:

1) You asked for all of the documents referenced on p. 6 of GBFRE_000041 (which is the "Sources of Information" page in Stout's June 30, 2022 Report). Our understanding is that GreatBanc or Stout will be providing these.

2) You asked for documentation and communications with Rabo Securities that detail the sales process. We are producing the three purchase proposals received by Rabo in connection with the sale.

Atlanta | Austin | Birmingham | Boston | Century City | Charlotte | Chattanooga | Chicago | Dallas | Denver | Fort Lauderdale
Houston | Jacksonville | Los Angeles | Miami | Nashville | Newport Beach | New York | Orlando | Philadelphia
Portland | Richmond | San Francisco | Stamford | Tallahassee | Tampa | Tysons | Washington, D.C. | West Palm Beach

Algiers | Bogotá | London | Mexico City | Monterrey

Mr. Dan Feinberg
January 29, 2025
Page 2

3) You asked for the details of actual earnout payments received by Kruse Western.   We are providing you with a copy of the promissory note by Viserion reflecting the first earnout payment.  The second earnout payment has not been made.

4) You asked for documentation detailing the flow of funds from the Transaction to the ESOP participants.  It is our understanding that GreatBanc will be providing you with (a) Stout's September 2022 report, which valued the company's remaining assets and described the standstill agreement among GreatBanc, the company, and the warrant holders, and (b) GreatBanc's meeting minutes related to the post-transaction split, which describe the event protection to which the ESOP was originally entitled, the standstill agreement, and the negotiation of the $50M figure.

5) You asked for the final "Purchase Price Allocation" per the Membership Interest Purchase Agreement.  We are still collecting this information and will provide it under separate cover.

6) You asked for the documentation and valuation / assessment of value for the assets or equity interests not purchased and an explanation of what happened with these interests/the surviving entities.  Please refer to the material provided in response to your Request 4 regarding the value of the assets not purchased by Viserion.  The assets not purchased by Viserion remain owned by Kruse Western, now Kruse Western, LLC. (Kruse Western, Inc. was converted to an LLC following the Viserion transaction.)

7) You asked for documentation that provides an explanation of what ultimately happened with the escrow funds.  We are providing you with the Joint Written Instructions to the Escrow Agent.

8) You asked for all of the Stout workpapers for the 2022 fairness analysis.  Please refer to the material provided in response to your Request 4, which includes Stout's September 2022 report

Sincerely yours,

HOLLAND & KNIGHT LLP

Chelsea A. McCarthy